Before STATE WORKMEN'S COMPENSATION COMMISSION,
Respondent.

In the Matter of the Claim of MARY RHEINWALD, Appellant,
for Compensation for Herself and Children for the Death of
ROBERT RHEINWALD, *v.* BUILDERS' BRICK AND SUPPLY COM-
PANY, Employer, and FIDELITY AND DEPOSIT COMPANY OF
BALTIMORE, MD., Insurance Carrier, Respondents.

Third Department, May 14, 1915.

Workmen's Compensation Law — painter — when an "employee" and
not an independent contractor — construction of statute — application
of decisions under prior statutes — appeal — consideration of evidence
taken before Commission — presumption that claim is within statute.

A painter employed by a builders' brick and supply company to repaint a
sign which he had before painted used by them in advertising their busi-
ness, who while at work slipped from the scaffold in some accidental
manner and was fatally injured, will be deemed to be an "employee"
within the meaning of the Workmen's Compensation Law, and not an
independent contractor, where it appears that he had no employees,
made no subcontracts and did the work personally, and that, although
he was doing the work in question under a written contract with his
employer, it did not appear but what the employer retained control over
the work.

In determining who is an "employee" within the meaning of the Work-
men's Compensation Law, only decisions under this or similar laws,
enacted to carry out the legislative purpose that accidents sustained by
those who do the work of an industry shall be borne by the industry
and paid for by its patrons and not left to fall upon the disabled worker
or dependent widow and children, can be recognized as controlling.

The statute is to be construed remediably and beneficially with the view
of carrying out fairly and fully the legislative purpose and with the
view to bringing within the purview and operation of the act all workers
whose accidental injuries are inherent occupational risks.

Where the Commission has certified the evidence taken before it, as well
as its own findings of fact therefrom to aid the court on appeal, the evi-
dence may be considered to explain but not to contradict or vary the
Commission's findings.

The provision of section 21 of the statute that in any proceeding for the
enforcement of a claim for compensation thereunder "it shall be pre-
sumed * * * in the absence of substantial evidence to the contrary
* * * that the claim comes within the provisions of" the statute, is
as operative and binding on appeal as in the proceeding before the
Commission.

LYON and HOWARD, JJ., dissented, with opinion.

APPEAL by Mary Rheinwald, claimant, from a decision of the Workmen's Compensation Commission, rendered on the 31st day of August, 1914, denying her claim for compensation to herself and her two minor children.

*Miles M. Dawson* [*Howard W. Ameli* and *Richard Blaine Dawson* of counsel], for the appellant.

*Walter G. Evans*, for the respondents Fidelity and Deposit Company and another.

*Jeremiah F. Connor* [*Egburt E. Woodbury, Attorney-General,* and *E. C. Aiken, Deputy Attorney-General,* of counsel], for the Workmen's Compensation Commission.

WOODWARD, J.:

I am of the opinion that the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1913, chap. 816, as re-en. and amd. by Laws of 1914, chap. 41, and Laws of 1914, chap. 316), fairly construed and beneficially applied, gives right of compensation to the present claimant before the State Workmen's Compensation Commission. The work in which Robert Rheinwald, the claimant's husband, was engaged at the time of his death, the manner in which he was doing it, the circumstances under which he came to be doing it, and the relation which his work bore to the business carried on by the respondent Builders' Brick and Supply Company, combine to bring within the scope of the statute his accidental and mortal injury in the course of that work, and entitle his widow and surviving children to the compensation which the law contemplates shall be paid to them when occupational mishap cuts off the wage earnings on which they were dependent for support. The Workmen's Compensation Law must in fairness be deemed to have been enacted in furtherance of a legislative determination, enforced by explicit mandate of the people through amendment of the State Constitution (Art. 1, § 19), that a new and different scheme and basis of indemnity for industrial accidents should be adopted in this State, in the light of the social experience of other Commonwealths and countries. Injuries sustained

by those who perform the manual and mechanical tasks of an industry must be deemed to have been intended by this statute to be made a social risk, a liability of the industry, a charge upon the production cost of the article manufactured or the service rendered.   Hitherto the rule of our statute and fundamental law had been that any right of recovery for industrial accidents must arise from a breach of the master's duty as to care and safeguards, and accordingly was limited by whatever contractual relation existed between the person injured and the person whose breach of duty was the efficient cause of injury.   For this historic concept of liability springing from omission of legal duty created by contractual relation there has been substituted an application of the social principle that, regardless of duty and regardless of fault, the expenses and loss of earnings resultant from occupational injury to a workman engaged in carrying on an inherently hazardous business or avocation of an employer should be paid in the first instance by the employer and by him made a charge against the operating costs of the business.   In place of the traditional juristic rule that the master must respond in damages when his servant is injured through the master's fault, and that otherwise the servant must go unrecompensed and the loss be borne by him alone, the people and Legislature have now put in force the changed concept that the *trade product* should be charged with all consequences of inherent trade hazards, and that losses to individual workers through disability while engaged in the service of the proprietor of the business should be distributed among all its consumers or patrons, rather than left to operate ruinously against the disabled employee or the solitary employer. This mandate of the fundamental will of the people of this State should be remediably applied and beneficially enforced by the State Workmen's Compensation Commission and by the courts, in fair fulfillment of the legislative purpose, and ought not now to be hampered or crippled by continued application of definitions, concepts and rules of liability which indubitably produced in large part the very conditions of hardship for which the present statute was designed as comprehensive relief.

For these and consequent reasons, I am convinced that the

learned majority of the State Workmen's Compensation Commission were in error in ruling that Robert Rheinwald was not, at the time of the injury which caused his death, an "employee" within the meaning of the Workmen's Compensation Law and a worker entitled to claim its benefits.

The facts of the present case are hardly controverted, but its issues are of vital importance to the efficiency of the plan of compensation created by the statute and the extent to which its administration will be able to fulfill the purposes for which it was enacted.   At or about noon on July 1, 1914, Robert Rheinwald, the husband of the claimant, was at work on a scaffold on one of the outside walls of a three-and-one-half story brick stable owned by the Builders' Brick and Supply Company at One Hundred and Seventy-second street and West Farms road, in the borough of The Bronx, city of New York.   For ten years he had been by trade a painter, especially a painter of signs, and on July first he was at work repainting a large sign which he had himself painted on this building wall several years before.   In some accidental manner not explained by the record, he slipped from the scaffold or it gave way, and he fell to the ground, received a fractured skull and other mortal injuries, and died a few minutes later.   Several months before his death there had gone into effect in this State the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1913, chap. 816, as re-en. and amd. by Laws of 1914, chap. 41, and Laws of 1914, chap. 316), which declares (§ 2) that the "compensation" provided for therein "shall be *payable for* injuries sustained or death incurred by *employees* engaged in the following hazardous *employments* :   *   *   *   Group 42.   *   *   * *painting*,   *   *   *." The statute further provides that "'employee' means a person who is engaged in a hazardous *employment* in the *service* of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his *employment* away from the plant of his *employer*, and shall not include farm laborers or domestic servants;" "employer" is defined to mean "a person   *   *   *   corporation   *   *   *   *employing workmen* in hazardous employments;" and "employment" is stated to include "employment only in a trade, business or occupation carried on by the

employer for pecuniary gain." (§ 3, subds. 3, 4, 5.) The Builders' Brick and Supply Company, as its name indicates, was in the business of manufacturing and selling brick and other building materials, and the sign in question was one of its methods of advertising that business. Consequently it cannot be gainsaid that the painting or repainting of this sign would, if performed by an "employee," be a "hazardous employment;" that painting or repainting such a sign would, if performed by an "employee," be employment "in a * * * business * * * carried on by the employer for pecuniary gain," and that the death of an "employee" as the result of accidental injury in the course of such painting or repainting would entitle the widow and surviving children of the deceased to the compensation provided by the statute. (§ 3, subds. 7, 8.)

The Workmen's Compensation Law further provides that "every employer subject to the provisions of this chapter shall *pay or provide,* as required by this chapter, compensation according to the schedules of this article for the disability or death of his *employee* resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, *without regard to fault as a cause of such injury.*" (§ 10.) The following section stipulates that "the liability prescribed by the last preceding section shall be exclusive," except that in the event an employer fails "to secure the payment of compensation for his injured employees and their dependents" by one of the three methods enumerated in section 50 of the act, the injured employee, or his legal representative in case death results from the injury, has the option of compensation under the act or suit at law against an employer shorn of common-law defenses. (§ 11.) The defendant, respondent, the Builders' Brick and Supply Company, had, pursuant to subdivision 2 of section 50, secured the payment of compensation to its injured employees by insuring the same with the Fidelity and Deposit Company of Baltimore, Md., known under the provisions of the act as the "insurance carrier." (§ 54.) The Builders' Brick and Supply Company having thus "provided compensation" for its injured employees through securing the payment thereof by the insurance car-

rier, the claimant asserts her right to reimbursement thereunder.

Upon the death of Rheinwald while at work as a painter on the sign of the Builders' Brick and Supply Company, the notices required by statute (§ 18) were duly served in behalf of the widow and minor children, proofs of death were duly submitted, claim was made to the compensation provided for by the statute, the claim was duly brought for adjustment before the State Workmen's Compensation Commission, and testimony was taken at length. On August 31, 1914, the Commission handed down its findings of fact and conclusions of law adverse to the claimant's contentions, and rendered the following decision: That "the deceased was conducting an independent business, that the defendant had no control over the work, and that Rheinwald was an independent contractor and not an employee within the meaning of the Compensation Law." In this determination Chairman Dowling and Commissioners Darlington and Mosher concurred. Commissioners Wainwright and Mitchell filed a dissenting opinion, which expounded a contrary view upon the central issue in the case.

Section 23 of the act provides that " An award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction, as against the State fund or between the parties, unless, within thirty days after a copy of such award or decision has been sent to the parties, an appeal be taken to the Appellate Division of the Supreme Court of the Third Department. The Commission may also, in its discretion, where the claim for compensation was not made against the State fund, on the application of either party, certify to such Appellate Division of the Supreme Court, questions of law involved in its decision. Such appeals and the questions so certified shall be heard in a summary manner and shall have precedence over all other civil cases in such court." The claimant appealed from the Commission's adverse determination, and on October 5, 1914, the Commission, on the application of her counsel, passed a resolution certifying to this court " the following question of law involved in the decision of the State Workmen's Compensation Commission denying the

claim for compensation in Claim No. 602, Robert Rheinwald, deceased: * * * In view of the *evidence* in this case, was Rheinwald an *employee* within the meaning of the Workmen's Compensation Law ? "

By the form of the question certified in the above quotation, of which the italics are mine, the Commission has asked this court for a ruling upon the basic question of law involved in the Commission's decision. The Commission made certain findings of fact, from which it reached the conclusion of law that Rheinwald was not an " employee " within the meaning of the Workmen's Compensation Law. Section 20 of the statute makes the decision of the Commission " final as to all questions of fact," but the Commission has certified the evidence taken before it, as well as its own findings of fact therefrom, to aid this court in reaching a determination as to the correctness of the Commission's legal conclusion. The evidence taken before the Commission is, therefore, before this court to supplement, explain and illumine, but not to contradict or vary, the Commission's findings of fact, and in all cases the question of the correctness of the Commission's determination as to the applicability of the statute to the injury upon which the claim is based remains a question for judicial scrutiny, in the light of the facts as found by the Commission.

Examining the findings, then, in the light of the evidence, do they sustain the decision of a majority of the Commission that Robert Rheinwald was a so-called " independent contractor " and that he accordingly was not an " employee " within the meaning of the statute ? He was a painter by trade, and had worked at this trade for many years. He often did signpainting, for the Builders' Brick and Supply Company and other concerns, but his work was by no means confined to signpainting. He did general painting " wherever he could get a job " and was " out of work," as testified, " some of the time." He had done all of the painting work which had been done for the Builders' Brick and Supply Company and its affiliated concern, the P. J. Heaney Company, for at least five years before his death. He had, on various occasions, painted for them a sign, a derrick, a fence, an automobile, an automobile

truck, and similar work; and he did similar painting for other concerns as desired.   Apparently he was usually paid according to a price agreed on in advance of the beginning of work, rather than by the day, although this does not clearly appear as to any piece of work except the signpainting.   The Commission finds that Rheinwald *usually* performed the work personally, did not usually employ others on his job, and that he had not employed other painters in performing previous work for the Builders' Brick and Supply Company, except possibly upon one occasion. As to that wholly unidentified occasion, there was no definite or satisfactory evidence before the Commission, and no evidence whatever that on any other occasion he employed a helper while working for anybody or that he ever took any job on which he exercised any supervision or superintendence or did anything except personally perform the application of the materials and paint.   He was working alone when the scaffold precipitated him to the ground, and was engaged in "doing over" a sign which he had personally painted several years before but which had not remained in condition satisfactory to the owner of the premises.

The Commission has found as a fact that "the previous work done [by Rheinwald] for the Builders' Brick and Supply Company had usually been done under oral agreement."   The terms of previous employments or contracts do not appear in the record.   "A written contract was asked for [by the Builders' Brick and Supply Company] in this instance," the Commission states, "because some work performed previously upon this sign had been unsatisfactory and because agreement was required that he use certain specified materials and make good for faults in the work," should any defects develop from specified causes within a period of four years.   Accordingly, on June 30, 1914, he signed the following contract to do the work in the course of which he was injured one day later: "I agree to paint new signs on stable and north end of office, same size and wording and remove old paint and lettering on same, all for the sum of fifty dollars and hereby guarantee all work to last in good shape for a period of four years from completion and agree to replace without charge any defects from chipping or poor material which may develop within that time.   I agree

to put on not less than two (2) coats of paint and it is hereby understood and agreed that should I use any materials than Atlantic White Lead, Linseed Oil, pure Turpentine, Chrome Yellow and Lamp Black, that I shall not require to be paid for any work or material.   Work to be satisfactory to owner when completed."

Materials as well as tools for painting performed by him he usually supplied, as in this instance, and he kept these in the cellar of his home.   As an aid in obtaining signpainting to do, he had letter stationery or billheads printed with his home address and the indorsement "Robert Rheinwald, Jr., Signs." It does not appear, however, that he ever sent out "bills" or statements for any work done.   On at least one occasion he had done work for another signpainter in the neighborhood, but it does not appear that he had ever employed a signpainter or had the assistance of a signpainter in any work done by him.   The evidence, as well as the findings, fully support the position of the dissenting members of the Commission, that Rheinwald "was of the grade of *workers,* and his work of the kind of work that this law contemplates."   Of this there can hardly be doubt or denial.   Rheinwald was *in fact* a *workingman,* engaged in doing, personally and exclusively, a *kind* of skilled manual labor which the Workmen's Compensation Law specifically covers, and as to which it clearly contemplates. that those engaged therein shall not have to bear personally the inherent risks of their occupation or the burden of loss from accidental injury therein.   The statute furthermore provides (§ 21) that in any proceeding for the enforcement of a claim for compensation thereunder "it shall be *presumed, in the absence of substantial evidence to the contrary,* * * * that the claim comes within the provisions of" the act.   That legislative presumption is, of course, as operative and binding in this court as in the Commission below.   When a workman or his survivor asks compensation for occupational accident under the statute, the presumption is clear and sufficient, in the absence of substantial evidence to the contrary, that he was an "employee" within the meaning of the statute and is entitled to call into activity its machinery for the economic distribution of the loss

occasioned by such injury among all patrons of the industry in which he was employed.

The majority of the Commission have, however, sustained the contention of the insurance carrier and the Builders' Brick and Supply Company that the widow and surviving children of the deceased painter are not entitled to the compensation provided in the Workmen's Compensation Law, on the ground that " the deceased was conducting an independent business, that the defendant had no control over the work, and that Rheinwald was an independent contractor, and not an employee within the meaning of the Compensation Law." No finding of fact, it will be noted, was made by the Commission that the respondent Builders' Brick and Supply Company had no control or supervision over the work being done by Rheinwald, and the question whether that conclusion and the parallel conclusion as to Rheinwald's status as an " independent contractor " were legally justified must be determined here in the light of the findings as explained and supplemented by the evidence certified to this court by the Commission.

The action of the majority of the Commission presents essentially two questions for scrutiny here. The first of these concerns the correctness of the contention of the respondents that Rheinwald was not a " workman " or " employee " but rather an " independent contractor," within the meaning and scope of the terms " workman " or " employee " as used in " master-and-servant " statutes or in common-law decisions applying familiar rules of the master's liability in negligence for injuries sustained by an employee. The second and more vital question addresses itself to the respondents' contention that decisions at common law or under " employers' liability " statutes, involving the question as to whom the master owes a duty of care and precaution arising out of the contractual relation of hiring, must be regarded as controlling now the determination as to who is an " employee " within the meaning of a statute enacted pursuant to the changed social purpose which I have indicated.

The first of these two questions hardly requires discussion at length, in view of the rule which I conceive should be followed in all interpretation of the Workmen's Compensation Law.

The respondents contend, and the majority of the Commission below has in effect held, that Rheinwald was not a "servant," "workman" or "employee" at all for the reason that, irrespective of the grade of work he was doing or the way in which he was doing it, and irrespective of the relation which he and his work in fact bore to the business of the Builders' Brick and Supply Company, the *contractual* relation which he had assumed toward that company made him what must be regarded as an "independent contractor," as that term has been defined in negligence actions, at common law and under employers' liability statutes.    The respondents contend that this contractual status as an "independent contractor" would, prior to the enactment of the Workmen's Compensation Law, have absolved the Builders' Brick and Supply Company from liability to him for negligent violation of the master's duty of care and precaution as to employees, and that under the new statute the same contractual status bars Rheinwald's widow and children from claiming any benefits from the insurance which the company provided for its employees, pursuant to section 50 of the act.    The question whether Rheinwald was to be deemed an "independent contractor," within the meaning of statutes in force prior to the Workmen's Compensation Law, is a question unadjudicated in this State and not capable of so ready resolution as respondents' counsel has contended.    Thompson, in his work on Negligence (2d ed. § 622), says: "An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation representing the will of his employer, only as to the result of his work, and not as to the means by which it is accomplished."

Labatt, in his monumental compendium on Master and Servant (2d ed. § 64), says: "The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed."

Shearman & Redfield, in the course of their volumes on the Law of Negligence, epitomize the familiar rule as follows:

"Although, in general sense, every person who enters into a contract may be called a 'contractor,' yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect of all its details.   The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished. * * *   In actual affairs, an independent contractor generally pursues the business of contracting, enters into a contract with his employer to do a specified piece of work for a specific price, makes his own sub-contracts, employs, controls, pays and discharges his own employees, furnishes his own material, and directs and controls the execution of the work.   Where these conditions concur, there is, of course, no difficulty in determining his character as such.   It is only where one or more of them is lacking that a question arises.   *The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work, and have the right to control the mode and manner of doing it.*"   (1 S. & R. Neg. [6th ed.] § 164.)

Similar doctrine has been declared and applied, by courts of this State, in *Hopkins* v. *Empire Engineering Corporation* (152 App. Div. 570); *Schular* v. *Hudson River R. R. Co.* (38 Barb. 653); *Finkelstein* v. *Balkin* (103 N. Y. Supp. 99), and *People* v. *Orange County Road Const. Co.* (175 N. Y. 84); though it should be said that none of those decisions involved a state of facts analogous to that at bar.   Rheinwald had no employees, made no subcontracts, did the work personally in the first instance, and was engaged personally in "doing it over" when he was mortally injured.   The decisive test of contractual status in an independent calling is often stated, under authorities such as those above quoted, to be whether the person doing the work is by the contract placed in the position of freedom from the orders and control of his employer, and a position of representing the employer's will only as to results, and not at all as to

means, methods or manner of doing the work.   Applying this test, is it clear under the findings and evidence at bar that Rheinwald was an "independent contractor" and not an "employee" even under statutes prior to the Workmen's Compensation Law? The Commission concludes that the employing company "had no control over the work," but, as I have pointed out, it made no finding of fact to that effect.   The record itself clearly indicates that it was contemplated by both Rheinwald and his employer that he should and would do all the work personally; he had no assistants on whose labor he made a profit; he personally performed every detail of work for which he was paid; and the record indicates that both understood that full rights of control and direction were reserved to and ordinarily exercised by the employer on painting work performed by Rheinwald.   For example, the record shows the following replies by the employer's president: "Q. Did you order him to paint your automobile truck or automobile? A. I did.  *  *  *  Q. Are you around the brickyard? A. Most of the time.   This is the only work he started I did not see.  *  *  *  Q. *Did you exercise any supervision whatever, Mr. Heaney, as to the manner* in which this work was being done? A. *On this particular job I did not.*   I was not there when he started."

Courts of other States have increasingly taken an enlightened and common-sense view as to what circumstances spell out an independent calling, so as to relieve the employer from statutory or common-law duties of care and precaution (*Interstate Coal Co.* v. *Trivett,* 155 Ky. 795; *Employers' Indemnity Co. of Philadelphia* v. *Kelly Coal Co.,* 156 id. 74; *Waters* v. *Pioneer Fuel Co.,* 52 Minn. 474; *Chicago, R. I. & Pac. Ry. Co.* v. *Bennett,* 36 Okla. 358); and I have no doubt that the courts of this State would have similar regard for the actualities of modern industrial organization, in determining whether a manual laborer doing work wholly of the manual laborers' grade, had by contractual arrangement with his employer absolved the latter, intentionally or unintentionally, from liability for breach of the rules of care and safeguard long made obligatory by law.

The question, however, is not decisive, or hardly material, here.   The "independent contractor" was one whose contract-

ual relation with him for whom the work was being performed was such that the former could not fairly be heard to say that *he* had "assumed the risks" of the occupation, and in consequence could not complain that his employer owed him the full and usual duty of precaution. The "independent contractor" doctrine is thus part and parcel of the "*fault*" theory of *employers' liability*. The present question arises under the Workmen's Compensation Law, enacted to supersede the statutes and common-law principles whose terminology we have been discussing, enacted to carry out a legislative purpose that accidents sustained by those who do the work of an industry shall be borne by the industry and paid for by its patrons, and not left to fall harshly upon the disabled worker or his dependent widow and children. Therefore, at the outset, the rule must fairly be laid down that in determining who is an "employee" within the meaning of the present law only decisions under this or similar acts based on the identical principle, can be recognized as controlling, influential or even interesting. Furthermore, it must be predicated as a fundamental canon of the proper construction of the Workmen's Compensation Law that the statute is to be construed remediably and beneficially, with the view of carrying out fairly and fully the legislative purpose, and with the view to bringing within the purview and operation of the act all workers whose accidental injuries are inherent occupational risks, rather than with the view to excluding from the operation and protection of the act persons whose claims to its benefits fall fairly within the principle that disabilities to workers through trade mishaps should not be left to hang burdensomely on individuals who might thereby be forced into the class of dependents on public or private charity. A careful reading of the messages of successive Governors upon the subject, an examination of the exhaustive report prepared by the so-called Wainwright Commission of 1909, which drafted this State's first compensation law, an analysis of the decision of the Court of Appeals (*Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271), holding that such a statute could not be put in force in this State without explicit amendment of the Constitution, combine to remove any doubt as to the legislative purpose to supersede "rules of law governing

legal liability" which were stated by Governor Hughes, in his annual message to the Legislature of 1910, to "offend the common sense of fairness" and the purpose likewise to carry out the recommendation of the Wainwright Commission that the State should "establish a new system of compensation for accidents to workmen." Careful perusal of the report of the Wainwright Commission further discloses that perhaps its chief social indictment of the existing system of employers' liability upon proof of his fault was that, as shown by authenti‑ cated tables of continental and American experience, forty to sixty per cent of accidents in industry were found to occur essentially without relation to legal fault, but were inherent in its normal course, and that if this loss were left to be borne wholly by persons of the grade of workers, their incomes from the industry have not ordinarily been sufficient to bear such a loss of earnings, with the result that the workers and their dependents became objects of charity, dependents of a society which had forced on them alone the onerous incidence of a burden which fairly belonged to society itself. The eco‑ nomic status of the worker and the income he has been deriv‑ ing from his toil, therefore, became factors in determining whether the person disabled or killed was "of the grade of workers."

Was Rheinwald an "employee" in fairness and in fact within the meaning of the Workmen's Compensation Law? Was he of the grade and status of worker, rather than of the grade and status of independent enterpriser? I am of opinion that he was, and that such a holding is essential to effectuate the pur‑ pose of the act, in transmitting the burden of this bereavement from the scanty purse of this workingman's widow and chil‑ dren to all the patrons of the product or service furnished by his employer. The fact that he was to be paid a lump sum or "by the job" cannot be recognized as taking him out of the class of "employees." The fact that his contract to do the work was in writing is not decisive on that issue, or the fact that by it he made certain undertakings of satisfaction of the employer or replacement if the finished work did not endure an expected length of time. The fact that his employment by the respond‑ ent was casual or intermittent cannot deprive him of the status

of employee, in the absence of explicit legislative pronounce-ment to that effect. The fact that he furnished tools or materials, or undertook to do a specified "job" or produce a given result, does not prevent his being in fact a workman, an "employee," within the purview of this statute. Common sense and regard for the actualities should be potent on this issue, rather than technical distinctions and elaborate refinements. Rheinwald really was a worker; the sum he received for his painting was in an economic sense wages, and not profits; he had no helpers, on whose work he made a profit; he was not an employer, with employees whom it was his duty to insure under the act; he personally performed all the work; it was contemplated by the employer that he would; and the employer had at least potential control, direction and super-vision of all the work Rheinwald did at his trade for the respond-ent. The nature of the work Rheinwald was doing is far more influential on the present issue than any question as to the form of Rheinwald's contract of hiring, because the present law proceeds, not on the theory that an *employer* owes a legal *duty* to his *employees*, but that the industry and its patrons should assume the burdens of injuries sustained by the workers in the industry, as incidents of bringing into being its product or service. The law was intended for the protection of *work-men* and their families; it was intended to afford machinery by which the burdens of injuries sustained by those who do the actual work of a business and are not themselves employers with a duty of insurance under the act, may be socially dis-tributed and borne by society in general. The question is, what was the injured man doing, and what was his part in or relation to the actual work, rather than the question whether his contractual relation with the employer was such as to absolve the former from common-law duties of care for the safety of the worker. The question whether an injured worker was an "employee" within the meaning of the Workmen's Compensation Law is to be determined, in the first instance, by the Compensation Commission, under all of the facts of the particular case and the rules of construction herein laid down. Whether an injured worker was an "employee," under all of the facts surrounding his participation in the industry, remains

a question of law for the consideration of this court, in the light of the facts as found by the Commission. In the case at bar, I am clear that Rheinwald was an "employee" within the meaning of the act.

The carefully considered opinions of the majority of the Industrial Accident Commission of the State of California in its very recent decision as to *Mrs. James Mason* v. '*Western Metal Supply Co.* (not yet officially reported), are in accord with the views herein set out. The minority opinion in that tribunal is based upon apprehension of consequences against which the New York statute plainly guards, through the restriction of the term "employment" to "a trade, business or occupation carried on by the employer for pecuniary gain." (§ 3, subd. 5.) If it is deemed desirable further to withhold compensation from casual or occasional employees, as is done by the compensation acts of some States, that is a matter for the Legislature, not for court or commission. The expediency of such a limitation could not, even if established, be made a canon of construction of the existing statute or made a factor adverse to fair definition of its fundamental terms.

The question certified is answered in the affirmative; the decision is reversed, and the claim and the proceeding are remanded to the Commission, with instructions to proceed to the computation and allowance of the claimant's recovery under the statute.

All concurred, except LYON, J., dissenting in opinion, in which HOWARD, J., concurred.

LYON, J. (dissenting):

I cannot concur in the conclusion reached in the foregoing opinion that Rheinwald was an employee and not an independent contractor. The contract under which the work was done was in writing, and by it Rheinwald agreed to paint signs on stable, office and shed for fifty dollars, and to replace, without charge, any defects which might appear within four years, and that should he use any materials other than those specified in the contract he should not be paid for any work or material; the work to be satisfactory to the owner when completed.

Rheinwald had done other job painting for the supply com-

pany, and on at least one previous occasion had performed the same kind of work for that company, for which he had been paid by the job, and which had not proved as lasting as it should have proven, hence the guaranty in the last contract. Rheinwald furnished his own paints and painting tools, which he kept in the cellar of his house; he used printed billheads on which his name, the word "Signs" and his place of residence were given; he employed his own capital; had the benefit of the profits from his work; did his work on his own time and whenever and in the manner in which he saw fit; was free under his contract to employ assistants in the work or do it alone as he wished, and in doing it was wholly exempt from any right whatever upon the part of the supply company to supervise its execution. In fact, Rheinwald was his own master, and was in no way whatever subject to the direction or control of the supply company, which was not engaged in the painting business but was a dealer in brick.

Appellant's counsel conceded upon the hearing before the Commission that in case Rheinwald had assistants upon the work "that would take him out of the act absolutely — then he would become an independent contractor." While, perhaps, such concession is not controlling, nothing whatever in the contract, directly or impliedly, prevented his hiring assistants to work upon the job, as before suggested. It also appears, from the following testimony given upon the hearing before the Commission, that this employment was not considered by the respondents as a subject of insurance: "Q. [By Commission] Is that included in the pay-roll submitted to the insurance company? A. It was not. Q. They did not pay that in insuring themselves? A. No." While, perhaps, what the respondents may have considered is not material upon the question of the liability of the respondents, it answers the suggestion that the insurance company, having been paid for carrying the risk, ought not now in fairness to question its liability.

While I fully concur in very much of what my learned associate has so well and ably said in the prevailing opinion as to the beneficent intent of the Workmen's Compensation Law, and to the effect that it should be liberally construed to effectuate

the purpose for which it was created, I cannot agree with him, in view of the evidence which was given before the Commission, that Rheinwald was an employee within the statute, but am forced to the conclusion that Rheinwald was an independent contractor, and hence that the majority decision of the Compensation Commission to that effect was correct and should be affirmed.

HOWARD, J., concurred.

Question certified answered in the affirmative; decision reversed, and the claim and the proceeding remanded to the Workmen's Compensation Commission, with instructions to proceed to the computation and allowance of the claimant's recovery under the statute.