Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MARY A. CUMMINGS, Respondent, for Compensation to Herself under the Workmen's Compensation Law, for the Death of PETER CUMMINGS, Her Husband, against UNDERWOOD SILK FABRIC COMPANY, INC., Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, September 11, 1918.

Workmen's Compensation Law — "employee" within meaning of subdivision 4 of section 3 — casual employee in service of employer engaged in hazardous employment — independent contractor.

An employee in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment is, since the amendment of 1916, an "employee" within the meaning of subdivision 4 of section 3 of the Workmen's Compensation Law.

A mechanic employed by a company engaged in a hazardous business to erect a smokestack, who furnished appliances and what help he might need in addition to two men assigned to the work by his employer, was not an independent contractor.

LYON and H. T. KELLOGG, JJ., dissented, with opinion.

APPEAL by the defendants, Underwood Silk Fabric Company, Inc., and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 20th day of April, 1917.

*Amos H. Stephens* [*E. Clyde Sherwood* and *William B. Davis*, of counsel] for the appellants.

*Merton E. Lewis, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], *Robert W. Bonynge,* counsel for State Industrial Commission, and *R. H. Brown,* for the respondents.

WOODWARD, J.:

The death of the employee resulted from an accidental injury September 16, 1916, at the plant where a hazardous employment was carried on by the employer. He was, therefore, an employee within the meaning of subdivision 4 of section 3 of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41), as amended by chapter 622 of the Laws of 1916. (*Matter of Dose* v. *Moehle Lithographic Co.,* 221 N. Y. 401; *Matter of McNally* v. *Diamond Mills Paper Co.,* 223 id. 83.)

In *Solomon* v. *Bonis* (181 App. Div. 672; affd., 223 N. Y. 689) the injury occurred in a non-hazardous employment. It is not, therefore, an authority here.

Since the amendment of 1916 a casual employee in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment, is within the act. Under the circumstances of this case, the decedent was not an independent contractor, but in the ordinary employ of the appellant employer.

I am not unmindful of the difficulty in reaching correct decisions in the phase of the Workmen's Compensation Law here presented; but, after a careful study of the authorities, I am persuaded that both law and justice require an affirmance and I so recommend.

All concurred, except LYON, J., dissenting in opinion, in which H. T. KELLOGG, J., concurred.

LYON, J. (dissenting):

The sole question presented by this appeal is whether the deceased was an employee of the Underwood Silk Fabric Company, Inc., or an independent contractor. He was a mechanic, and conducted a small shop in his barn known as "The Fixit Shop," in Canajoharie, N. Y. He had there a lathe and tools, and did some work in his shop. He also went about the neighborhood and fixed machinery. The plant

of the Underwood. Silk Fabric Company, Inc., was directly across the river at Palatine Bridge, N. Y. This company manufactured silk gloves and silk underwear. The president of the company, wishing a new smokestack erected at the plant, was recommended to Peter Cummings as a proper party to do the work. Mr. Cummings came to the plant, looked the work over and said he could do it. He was told to get what help he needed; furnish the appliances; take down the portion of the old stack; put up the new one, and when his work was done, present his bill and it would be paid. Cummings was to furnish what help he might need in addition to two men who were assigned to the work by the company. Cummings obtained the ropes and other necessary tackle for the work about the town. After his death the company returned them — hearing where he had borrowed them of the expressman who carried them. Cummings had entire charge of the work. He alone directed the doing of the work. He controlled the mode and manner of doing it. The men took orders from him. They worked about five hours Friday and were stopped by the rain. They worked five hours Saturday, and on the way to dinner one of the men asked where they should get their pay. Cummings said to present their time to the company. They worked until four o'clock when the accident happened by reason of the slipping of the hook which Cummings thought would hold. Cummings' heirs presented his time to the company for ten hours, at fifty cents per hour, and were paid. Cummings had a small book in which he entered the hours he had worked for various parties. He charged different prices per hour. March, 1917, the Commission made its award to the widow of Peter Cummings on the basis of *Matter of Rheinwald* v. *Builders' Brick & Supply Co.* (168 App. Div. 425).

We think that the finding that the deceased was an employee of the Underwood Silk Fabric Company, Inc., was erroneous.

Miss Emma Cummings testified that she did not of her own knowledge know under what arrangements Cummings was putting up this smokestack.

Homer Fusmer testified: " * * * Q. Who did you take orders from while on the job? A. Mr. Cummings; Mr. Underwood gave some orders around there. Q. What did

Mr. Underwood tell you to do? A. Different things, while putting the stack together. I cannot just remember what the exact orders were. Q. Who did you consider in charge of the work? A. Mr. Cummings. Q. Who was telling how to do the work? A. Mr. Cummings, naturally, because he was the mechanic on the job. Q. Did you say anything to Mr. Cummings with reference to whether the hook would slip off from the stack, and call his attention to that? A. Yes, sir. Q. What was there to that? A. I told him I thought the hook would slip off from the bottom of the stack. Q. What did he say? A. He said he thought it was safe. Q. Did anyone else tell him that, that you know of? A. I think somebody else said something about it. Q. He said he thought it was safe? A. Yes, sir."

Webster Bierman testified: " * * * Q. Did you take orders on the job from anyone connected with the Underwood Company? A. No, sir. Q. Who did you take orders from? A. Mr. Cummings. Q. He was in sole charge of the work? A. Yes, sir. Q. He conducted the method of putting up the stack? A. Yes, sir. * * * Q. Did you ever see Mr. Underwood giving directions as to how to raise the stack, or anyone connected with the company, as to how to raise it, while you were on the job? A. No, sir."

Henry Underwood testified: " * * * Q. What arrangements did you make? A. * * * Mr. Cairns saw Mr. Cummings and sent him over to me. I took Mr. Cummings out and showed him what I wanted done and asked him if he could do it, as I had to go to Buffalo and couldn't do anything on it myself. I did not want to do it. He said he could; would put the stack up and make a good job of it. I told him, all right; to do it and when he got through to present his bill to us when it was finished and we would pay the bill. Mr. Cummings also was to hire what men he needed to help him and he did so. * * * Q. All the men that had anything to do with the raising of that smokestack were under Mr. Cummings' direction? A. Absolutely. Q. You did not furnish the appliances? A. No, sir. * * * Q. It wasn't the understanding between you that he keep a record of the time and base his charges on the time? A. None at all. No arrangement was made with regard to whether he should

be paid by the hour or the amount. Practically the exact words to Mr. Cummings from me were ' Mr. Cummings, you put the stack in place; hire whatever help you need, present as reasonable a bill as possible when the job is finished and we will pay the bill.' "

In *Matter of Bargey* v. *Massaro Macaroni Co.* (218 N. Y. 410) it was held that the deceased, who was a carpenter engaged in putting a partition on the first floor of the building, the second and third floors of which the corporation occupied as its factory, was not an employee of the corporation within the meaning of the law. In *Matter of Rheinwald* v. *Builders' Brick & Supply Co.* (*supra*) the Commission by a divided court held Rheinwald was an independent contractor and refused compensation. It then certified to the court this question: " In view of the evidence in this case, was Rheinwald an employee within the meaning of the Workmen's Compensation Law?" By a divided court it was held that he was an employee, and the claim was remanded to the Commission to award compensation. Upon appeal from such award it was reversed and the claim dismissed. (174 App. Div. 935.) Upon appeal the order was affirmed, the court holding that Rheinwald was an independent contractor. (223 N. Y. 572.) In *Matter of McNally* v. *Diamond Mills Paper Co.* (223 N. Y. 83) the claimant agreed to move the engine from the depot to the plant for a lump sum. The manufacturer agreed to furnish an engineer to superintend the installation. The court said: " That he was a contractor while engaged in transporting the engine from the railroad to the mill may be conceded. But when that contract had been performed, he assumed a new relation. He was then employed by the day to work as a laborer with others. He was not in control of the job; he had no power of superintendence or direction; he had no other rank than the regular employees of the mill who were with him; he took his orders from the engineer whom the mill had placed in charge. In this situation, the distinctive tokens of the independent contractor are lacking. The claimant for the purposes of this job was an employee, and nothing more."

I think it must be held that Cummings was an independent contractor and not an employee. I do not think that an independent contractor, by the amendment of 1916 to the

definition of an employee, is entitled to compensation even though the employer was engaged in a hazardous employ- ment. The cases cited by the prevailing opinion of *Matter of Dose* v. *Moehle Lithographic Co.* (221 N. Y. 401) and *Matter of McNally* v. *Diamond Mills Paper Co.* (223 id. 83) were not cases of an independent contractor, but one of employees.

The award should be reversed and the claim dismissed.

H. T. KELLOGG, J., concurred.

Award affirmed.