## UNITED STATES FIDELITY & GUARANTY CO. v. R. H. MACY & CO., INC.

### No. 271.

Circuit Court of Appeals, Second Circuit.
June 24, 1946.

L. HAND, Circuit Judge, dissenting.

———◇———

John J. O'Connor, of New York City (William B. Shelton, of New York City, of counsel), for appellant.

Andrews, Baird & Shumate, of New York City (William L. Shumate, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Mrs. Anna Kuenzli, an employee of Foley Manufacturing Company, hereafter called Foley, was injured by the fall of an elevator in the store of the defendant, R. H. Macy & Co., Inc., hereafter called Macy's. Foley was insured under a policy issued by the plaintiff pursuant to the Workmen's Compensation Law of the State of New York. Following the accident the insurance carrier paid the compensation awarded to the injured employee and, as the subrogee of her rights, brought the present action based on negligence against Macy's. Macy's defense to the action rested on the ground that Mrs. Kuenzli was also in its employ and since it also had workmen's compensation insurance no action for her injuries could be maintained against it. On this ground the defendant moved at the close of the plaintiff's case for a directed verdict and dismissal of the complaint. The motion was granted, and from the judgment of dismissal the plaintiff has appealed.

The sole question presented by the appeal is whether the proof was sufficient to require submission to the jury of the issue determined by the court. This requires a statement of the evidence.

Foley was a manufacturer of kitchen utensils and Macy's was one of its customers. By an arrangement between them, made in 1934, Foley was to furnish an employee to demonstrate the Foley made articles which Macy had purchased and had for sale. Foley would select a demonstrator, train her, place her in Macy's store and continue to pay her wages while she

worked there. It was understood that she would be subject to the hours and rules of the store governing Macy's own employees. Pursuant to this arrangement Mrs. Kuenzli started work at Macy's on July 14, 1941 and continued until the elevator accident which occurred November 21, 1941. Foley paid her $25 per week plus commissions on her sales of Foley made utensils. There were other sales girls behind the counter where she worked, and if the girl near her was busy Mrs. Kuenzli would help out by making sales of articles other than Foley products. She was assigned a separate "key" so that her sales could be identified on a cash register used by five or six other saleswomen employed at the same counter; and on sales made by her Macy's paid her weekly, in envelopes marked "Wages for week," a commission of 1%. During the 19 weeks before her accident such commissions amounted to $39.09, less 48 cents deducted by Macy's for social security or old age tax. Mr. Ringer, president of Foley, who testified to the arrangement between his company and Macy's, said that he had no agreement either with Macy's or with Mrs. Kuenzli that she could not also work for Macy's and receive compensation therefor, but he understood that Foley was paying all the compensation she got.

■■■■ In the opinion of a majority of the court the above recited facts, which are not in dispute, show that Mrs. Kuenzli was in the employ of Macy's as well as of Foley. The fact that Foley paid the main part of her compensation does not preclude her from being also in Macy's employ. She was engaged in selling its goods, whether they were Foley products or purchased from other manufacturers, and for services for which Foley did not pay her Macy's did; she was subject to its rules as to working hours, the type of uniform she wore, the courtesy with which she must treat customers, etc. Had she infringed them Macy's could doubtless have terminated her work at its store and demanded that Foley furnish another person as its demonstrator. Within the New York Compensation Act an employee may have more than one employer. Matter of De Noyer v. Cavanaugh, 221 N.Y. 273, 275, 116 N.E. 992; Schweitzer v. Thompson &

Norris Co., 229 N.Y. 97, 103, 127 N.E. 904; Lewis v. Hotel St. Regis, 287 N.Y. 598, 38 N.E.2d 708; cf. Knox v. Gimble Bros., 258 App.Div. 1013, 16 N.Y.S.2d 964. Such an employee, if injured in the course of employment, may recover workmen's compensation but cannot maintain an action for negligence against either employer if he carried insurance. Workmen's Compensation Law, Consol. Laws, c. 67, § 11. There is other evidence which strongly supports the conclusion that Mrs. Kuenzli was an employee of Macy's, but we have refrained from relying on it because it was not undisputed. Thus, she signed an application for employment which Macy's accepted. This would seem to have made a contract but she explained in her testimony that some clerk told her it was merely a "matter of form." This would raise a jury question as to whether the parties really meant to contract, since Macy's, by claiming it to be a contract, must ratify whatever inducement the unknown clerk made in procuring her signature. Another document signed by her was an application to join the Macy Mutual Aid Association. This was an admission that she was an employee of Macy's but as such is open to contradiction. A third document signed by Mrs. Kuenzli was a claim for compensation on account of her accident addressed to Macy's insurance carrier in which Macy's is named as her employer "without prejudice to claim otherwise." This also is no more than an admission. We do not, therefore, rely upon this documentary evidence. But for reasons already stated we think that the undisputed evidence established that Mrs. Kuenzli was in Macy's employ as well as Foley's. Hence the defendant's motion for a directed verdict was correctly granted.

The judgment is affirmed.

L. HAND, Circuit Judge (dissenting).

I hesitate to differ from my brothers in the construction of a state law, which has been the subject of so many decisions in the state courts themselves. Nevertheless, it does seem to me that Mrs. Kuenzli was not an "employee" within the meaning of the Workmen's Compensation Act. Suppose that the Foley Manufacturing Com-

pany had not been an employer from whom she was independently entitled to compensation. If my brothers are right, she would in that case lose any right to indemnity for her injuries, and yet her compensation would be measured by only two dollars a week. I should think that that was a consequence which could not have been intended. On the other hand, it seems scarcely possible that the question whether she was an employee of the defendant in any sense depends on whether she was entitled to compensation as an employee of the Foley Manufacturing Company. At least, I do not think that decisions like DeNoyer v. Cavanaugh, 221 N.Y. 273, 116 N.E. 992, and Lewis v. Hotel St. Regis, 287 N.Y. 598, 38 N.E.2d 708, give color to such a conclusion. So I think we must decide the case as though her compensation from the defendant had been her only remedy.

It is true that in some cases casual employees have been held to be within the Act. Rheinwald v. Building Brick & Supply Co., 168 App.Div. 425, 153 N.Y.S. 598; Cummings v. Underwood Silk Fabric Co., Inc., 184 App.Div. 456, 171 N.Y.S. 1046. Nevertheless there comes a point where, although the injured person has in fact been employed in the sense that he has been engaged by another is acting in his business, his activities are so sporadic and trifling that he is not within the Act. Seymour v. Odd Fellows Home, 267 N.Y. 354, 196 N.E. 287; Ferro v. Sinsheimer Estate, Inc., 256 N.Y. 398, 176 N.E. 817. It is true that both these cases are readily distinguishable on the facts, and indeed it would be curious if we were to find a case on all fours; but they do serve, I think, to show that employment in the more comprehensive sense is not the test. I should suppose that, like so many other questions, this was one of degree, dependent as I have already suggested upon how far compensation, considering its certainty, could possibly be thought to be the equivalent of indemnity. That is indeed a very loose standard, but here the incommensurability was extreme; and the services were few, dispersed and wholly gratuitous. These circumstances, I think, ought to put her case outside the Act.