In the Matter of the Estate of MARY CLARK THOMPSON, Deceased.

Surrogate's Court, New York County, November 23, 1925.

**Wills — construction — testatrix made specific bequests to designated servants and then gave specified amounts to " each person not named " in said clause but who had been in decedent's service for certain number of years at time of her death, — testatrix intended to include not only servants in house, but her chauffeur and those employed about grounds of various residences — day laborers in decedent's service not excluded from bequests — employment by another person at same time or receipt of small wages did not disqualify employees.**

Decedent's will, by which she made specific bequests to a maid and to a superintendent of her greenhouse, and then gave $10,000 to " each person not named " in the clause in which she recited the bequest to the servants whose names she set forth, who had been in decedent's service ten years or more immediately preceding her death, and $5,000 to each person in her service immediately preceding her decease, should be construed as including not only the servants in her house but her chauffeur and those employed about the grounds of her residences as superintendents, gardeners, farm workers and laborers who had served the necessary period of time under the provisions of the will.

The fact that many of decedent's employees were paid part of their time as *per diem* employees and at other times were placed upon the monthly payroll does not exclude such employees from participation in the benefits of the will, since a person is in the regular service of his master whether he be paid a *per diem* or a weekly, monthly or yearly wage or salary.

The decedent's bookkeeper was not disqualified as a legatee by the fact that she was employed at the same time by another person, but with the knowledge of the decedent.

The receipt of relatively small wages did not disqualify employees under the terms of the will.

PROCEEDING for construction of will.

*Baldwin, Holt, Gaillard & Fisher* [*William D. Gaillard* and *William Seward Allen* of counsel], for the executors.

*Jeremiah F. Connors*, special guardian.

*John Colmey*, for various claimants.

*Leon W. Van Deusen* for George A. Caldwell and others.

*Hamlin & Hamlin* [*Henry W. Hamlin* of counsel], for the claimant William Buss.

*Frederick D. Cribb*, for the claimants Sanders Pleasant and another.

Surrogate's Court, New York County, November, 1925.    [Vol. 126

*Frank A. Christian*, for Elizabeth M. Eiseline and others.

*Stewart & Shearer*, for New York Public Library and others.

FOLEY, S. This is a proceeding for the construction of the will, and particularly paragraph 8 thereof. That paragraph reads as follows: " I give and bequeath to each of my faithful servants Lena Anderson and Weldon Kershaw, if in my employment at the time of my death, the sum of Fifteen thousand dollars, and to each person not named above, who shall have been in my service ten years or more immediately preceding my decease the sum of Ten thousand dollars, and to each person who has been in my service for five years immediately preceding my decease the sum of Five thousand dollars."

The decedent left an estate of $10,000,000. The residue is ultimately to go to certain charitable and educational corporations and institutions. The terms of the will and the extrinsic testimony evince the great interest of the testatrix in the many employees of her household and upon her estates.

Various persons claiming to be in the service of the testatrix and entitled to the legacies under the terms of the will were cited in the proceeding. With the acquiescence of all the parties, a referee was appointed to take testimony as to the identity of the legatees, the nature of the services rendered by these persons, the period of such service, and to report to the surrogate the evidence and his opinion thereon. This report is now before the court for confirmation. The executors or their attorneys, in their own interpretation of the will, restricted the class of beneficiaries and paid the legacies to four servants, only, employed in the household of the testatrix in the following capacities: Butler, second man, houseman and the personal maid of Mrs. Thompson. The referee in his report held that this restriction was erroneous, that the testatrix intended the objects of her bounty to include not only the servants in the house, but her chauffeur and those employed upon the grounds of her various residences as superintendents, gardeners, farm workers and as laborers. His conclusion on this phase must be confirmed. He has found that seventeen employees are entitled to a legacy of $10,000 each, and six employees are entitled to a legacy of $5,000 each. He has excluded from participation in the benefits of the will seven persons.

In testamentary provisions of this class, the language of the will must be examined to ascertain the intention of the testator. Necessarily the beneficiaries vary as the terms of the will vary. Here the intent of the testatrix to include all persons *in her service* for the requisite periods is reasonably clear. It is not necessary to go beyond a strict and literal interpretation of the language used by

Misc. 91]    Surrogate's Court, New York County, November, 1925.

her.   She intended that the legacies be paid to all her servants in her service for the requisite periods of time fixed by her.   She might have confined her bounty to the narrower class of domestic servants employed in her household by appropriate words of description.   Such was the tenor of the will of Oliver H. Payne in *Lafrinz* v. *Whitney* (233 N. Y. 107) where the gift was to " each person * * * who at the time of my death shall be in my service and shall then be customarily employed as part of my *household in my house* in New York City or in my country house."   It was there held that the class was limited to those employed as part of the household, and particularly in the house.   In Mrs. Thompson's will she used the word " servants " in the broader sense of employees, for it is important to note that in paragraph 8 she first bequeathed the sum of $15,000 to each " of my faithful servants, Lena Anderson and Weldon Kershaw."   Lena Anderson was a maid and caretaker. Weldon Kershaw, on the other hand, was the superintendent of the greenhouse on her country estate.   He resided in a separate house provided by her.   While he performed certain minor duties about the household, really within the scope of his work as superintendent, it is clear from the evidence that he was not a member of her household staff, but was an outside employee.   The mention of his name and the nature of his services are conclusive as to the class of servants in the mind of the testatrix because the paragraph then proceeds to give " to each person *not named above,* who shall have been in my service ten years or more, immediately preceding my decease the sum of Ten thousand dollars."   Thus the testatrix, by specifically mentioning an outdoor servant included as beneficiaries all of the employees similarly employed on her various estates. Support for this conclusion is also found in the fact that she had " *named above,*" in the 7th paragraph, persons other than servants in the house, to wit, John J. Handrahan, the landscape superintendent and architect, and Addison P. Wilber, the general superintendent of her estate at Canandaigua, N. Y.   These persons were given legacies of $15,000 each.   In his opinion the referee pointed out that the courts of Virginia and Rhode Island have construed wills, somewhat similar in form, by extending the word " servant " to a class of employees beyond mere household servants.   (*Ginter* v. *Shelton,* 102 Va. 185; *Industrial Trust Company* v. *Alves,* —— R. I. ——; 124 Atl. 260.)   I hold, therefore, that the referee correctly found that all persons in the service of the testatrix, whether indoor or outdoor, whether purely household servants or employees in other capacities, who had served the necessary period of time are entitled to take the respective amounts as legatees.

(2) It is claimed by the executors and certain other parties

adverse to the claimants, that the testatrix intended to limit her gifts to employees paid monthly rather than to persons employed as day laborers upon her various estates. The situation is further complicated by the fact that many of these employees were paid part of their time as *per diem* employees and at other times were placed upon the monthly payroll. The referee's finding on this phase of the case must be sustained. The words " in my service " under the special circumstances of this case show no intention to exclude day laborers from the benefits mentioned in the will. The extrinsic testimony shows that these persons whom the referee has found to be legatees were employed exclusively by Mrs. Thompson. One of them, Ernest Standen, a groom, was employed for a period of over five years with a perfect record of fidelity and without the loss of a single day's work. Another, Patrick McKenna, foreman of laborers, was employed continuously, prior to the death of Mrs. Thompson, for ten years with only one day's absence. Others were employed exclusively by her but were laid off from time to time when the weather prevented outdoor work, or when their services as farm laborers or in other capacities were not required. Accurate records were kept of each workman's time and pay and these are in evidence. The will here is different from that in *Matter of Altman* (89 Misc. 697; affd., *sub. nom. Matter of Friedsam*, 171 App. Div. 903; affd., 217 N. Y. 680), where piece-workers were specifically excluded as objects of bounty. It appears from the evidence that these day laborers were treated as regular employees of Mrs. Thompson, that it was their custom to report regularly for duty to the various superintendents and other persons in charge of the different departments. They were not independent contractors, such as the piece-workers in the Altman will, since they were under the control and direction of their superiors employed by the testatrix. (*Matter of Rheinwald v. Builders', etc., Company,* 168 App. Div. 425.)

The special guardian contends that this conclusion might be extended to include casual or occasional workers, such as a laundress or hairdresser who might be employed but one day a week. The distinction is obvious, however, between the latter class of workers and the persons employed as day laborers by Mrs. Thompson. These workers were not casuals but were employed regularly during the requisite period of years with excusable or necessary absences acquiesced in by their immediate superiors. I hold that a person is in the regular service of his master whether he be paid a *per diem*, or a weekly, monthly or yearly wage or salary. This conclusion has been adopted by the courts in the determination of the status of *per diem* employees in the field of municipal law, in the law of master

MATTER OF THOMPSON. **95**

Misc. 91]     Surrogate's Court, New York County, November, 1925.

and servant and in other branches of the law. That part of the report of the referee which finds the persons employed on a *per diem* basis for the requisite periods to be legatees under the will is, therefore, confirmed. It also follows that persons employed part of the necessary period of service on a monthly basis and part on a daily basis are entitled to their legacies.

(3) The remainder of the report of the referee is likewise confirmed. His conclusion as to Elizabeth Eisline, who was a regular monthly employee for over ten years, and in the service of Mrs. Thompson for that period, is correct. She performed all the services as bookkeeper required of her. She was continuously employed by the decedent for over thirteen years. It appears that she was employed at the same time by another person, but with the knowledge of Mrs. Thompson. That fact does not disqualify her under the terms of the will as a legatee.

Minnie McKerr is likewise entitled to her legacy. She was employed as a butter-maker for a period of twenty-one years. The fact that she received relatively small wages in that capacity is urged as one ground of disqualification. No limitation was placed by the testatrix upon the smaller paid employees and the referee has correctly found that she was in the service of the decedent and entitled to her legacy.

A typical example of the extreme and narrow limitation exercised by the executors is found in the case of George Roy. He was employed by the decedent for over ten years. In May, 1923, two months before the death of Mrs. Thompson, he became paralyzed and was removed to the Canandaigua Memorial Hospital, established and maintained through the generosity of Mrs. Thompson. He had been a continuous employee and was paid upon a monthly basis. After he was taken to the hospital, and pursuant to the direction of Mrs. Thompson, he was placed upon half pay. He was never discharged from her employment. The referee has correctly found that he was in her service at the time of her death. (*Matter of Mitchell*, 114 Misc. 370.)

The referee has likewise correctly recommended payment of the sum of $5,000 to Thomas Chappel, a chauffeur employed by the testatrix immediately prior to her death. The evidence shows that he was given a leave of absence by Mrs. Thompson for service in the World War with the Canadian army. After service in France and discharge from the army, he returned to her employment under a previous arrangement made by her. The leave of absence, therefore, was with her express consent and he must be deemed to have been five years in her service and entitled to his legacy under the terms of the will.

The report of the referee in so far as it deals with persons excluded as legatees, because of the fact that they did not serve the requisite period of time fixed by the will, or were not actually employed at the time of her decease, is correct.

Submit decree on notice construing the will accordingly, confirming the referee's report and overruling the exceptions filed thereto.