GEORGE S. HOVEY, Trustee under Last Will of JOHN JOSEPH GRIER, v. MARY ANN GRIER ET AL.; E. W. ENGLE, Interpleader, Appellant; CELIA POINSETT, Interpleader, Respondent.—23 S. W. (2d) 1058.

Division One, February 3, 1930.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, Cyrus Crane* and *Winston H. Woodson* for appellant.

*Johnson, Lucas & Graves* for respondent.

LINDSAY, C.—The controversy here is between E. W. Engle and Celia Poinsett, opposing interpleaders, each claiming title to certain shares of stock of a corporation and accrued dividends thereon, under the will of John Joseph Grier, deceased, and held by George S. Hovey as trustee under said will. It was agreed that the shares in controversy have a value in excess of $14,600. The will of Mr. Grier was executed on November 9, 1916, and his death occurred on July 19, 1919. At his death the testator owned all the shares of stock of an incorporated company, and owned, and managed as well, certain other properties employed in his business not incorporated. The will gave the shares and other properties to Mr. Hovey as trustee, directing that the whole be incorporated and held and the business managed by the trustee, for a period of three years. The will made provision for the widow and certain relatives of the testator, not necessary to be noticed. It also provided that after the end of the three-year period, the trustee should make division of the shares of stock in the corporation among numerous beneficiaries in certain proportions. Among these beneficiaries were several persons who were employed by the testator at the time he made his will. E. W. Engle was in his employ at that time.

Celia Poinsett is a niece of the testator. The will, after directing that at the end of the three-year period the trustee should distribute to each of the named persons a certain percentage of the capital stock of the corporation, contained the following provision:

"If either (naming the beneficiaries, including E. W. Engle) shall not be in my employ at the time of my decease or shall cease to work under the direction of my said trustee, George S. Hovey, during the

said period of three years, that portion of said stock which would otherwise have gone to him shall be issued and delivered to Celia Poinsett, to be and to become her absolute property.''

During the World War, in the summer of 1918, E. W. Engle made application to the Surgeon General of the Army for a commission, and received his commission on August 6, 1918, and reported for duty on August 19, 1918. He remained in the army service until September 5, 1919, at which time he received his discharge, and thereupon he returned to the service of the corporation mentioned, under the direction of Mr. Hovey as trustee, and so remained until after the end of the three-year period.

The bill filed by the trustee set forth the terms of the will and the conditions in reference to E. W. Engle and Celia Poinsett, and alleged that both claimed the shares in controversy. The court allowed the trustee to deposit the certificate for the stock with the clerk of the court; the trustee was discharged, and Celia Poinsett and E. W. Engle filed their respective claims to the stock. Celia Poinsett by her answer and claim, expressed want of knowledge as to whether Engle had remained under the direction of the trustee during the three-year period, and admitted the other allegations of the bill except the allegation therein that E. W. Engle "went to the War as a soldier of the United States in the month of August, 1918.'' She expressly denied that allegation, and averred that at the time mentioned, E. W. Engle "left the employment of the testator, and obtained a position in the Army of the United States and remained therein until after the death of said Grier, and was not in the employment of said Grier at the time of his death.'' E. W. Engle, by his claim and answer to the claim of Celia Poinsett, alleged "that he went into the war as a soldier without, however, leaving the employment of said Grier, but on the contrary, he so went with the full knowledge and assent of Grier and with the understanding with said Grier that his going into the war would not terminate his employment with said Grier, but should be only temporary during such time as his services were needed by the Government, and that his position and place in said employment should be retained, and that he should return to the same upon the termination of his service as a soldier in the war.'' Celia Poinsett filed her answer to the claim and interplea of E. W. Engle. She denied, categorically, that E. W. Engle went into the war without leaving the employment of said Grier; that he so went with the assent of said Grier; that he went with the understanding with said Grier that his going into the war would not terminate his employment with said Grier but should be only temporary while his services should be needed by the Government; that his position and place in said employment should be retained and that he should return to the same upon the termination of his service as a soldier in the war.

Upon the issues so made, the cause went to trial to a jury upon evidence introduced by the respective parties. At the close of the evidence for Engle, Celia Poinsett asked the court to give a peremptory instruction to the jury to find the issues for her, and repeated that request at the close of all the evidence. These instructions were refused, and the cause submitted to the jury upon instructions for both parties, and the jury returned a verdict finding the issues in favor of E. W. Engle.

Upon the motions filed by the respective parties subsequent to the return of the verdict, the court rendered judgment in favor of Celia Poinsett, and E. W. Engle has appealed from the action of the court in so doing.

Celia Poinsett, as the respondent, has filed a motion for an affirmance of the judgment rendered in her favor by the trial court.  This motion has been taken with the case. The motion is put upon the ground that appellant's abstract of the record fails to show the timely filing of his motion for a new trial, that is, does show it was not filed within four days (exclusive of Sunday) after the judgment was rendered. On that ground it is contended there is nothing before this court except the record proper, and therefore the judgment must be affirmed.

The question raised by the motion makes desirable a statement, in order, of the proceedings had from the return of the verdict to the taking of the appeal. The verdict was returned on February 26, 1924, and two days later, E. W. Engle filed his motion for entry of judgment on the verdict. Within four days after the return of the verdict, Celia Poinsett filed her motion for a new trial, and her motion in arrest of judgment. The latter motion, termed a motion to arrest the judgment, was dual in character. The court was asked to arrest the judgment in favor of Engle, first upon the ground that his claim and interplea does not state a legal claim or right in him to the certificate of stock deposited with the clerk, nor state any cause of action on behalf of Engle; but that, aside from legal conclusions, it admits that he was not in the employ of Grier at the time of Grier's death. A second ground and assertion in the motion was, that the judgment was erroneous on its face, and contrary to the law governing the case, and thereupon it was asked that the court set aside the judgment notwithstanding the verdict of the jury, and enter judgment in favor of Celia Poinsett in ''accordance with the law and the evidence.'' These respective motions were taken under advisement by the court. At the November Term, 1925, and on the 31st Day of December, 1925, the same being the forty-third day of the regular November term, 1925, the court sustained Celia Poinsett's motion for a new trial. The court gave as the reason for

sustaining the motion for a new trial error in refusing to give the peremptory Instruction marked "B" which would have told the jury the verdict must be in favor of Celia Poinsett although they might believe all of the testimony introduced by E. W. Engle. On the same day, the court took up Celia Poinsett's motion in arrest of judgment and for judgment in her favor notwithstanding the verdict of the jury; and, the record entry recites that the court having fully considered the same, "and the motion for a new trial herein having been already sustained and the judgment set aside, this motion in so far as it asks for judgment on the pleadings and the evidence, is sustained. Wherefore, the court doth order, adjudge and decree that interpleader Celia Poinsett is entitled to have" (the shares of stock in issue) "as against interpleader E. W. Engle." Afterwards, on the 6th day of January, 1926, designated as the forty-seventh day of the regular November term, 1925, of said court, E. W. Engle filed his motion for a new trial, the complaint being directed mainly against the action of the court in entering said judgment in favor of Celia Poinsett; and on the same day also filed his motion in arrest of judgment. On the 9th day of January, 1926, the court, by entry of record, overruled the motion of E. W. Engle for judgment upon the verdict, and on the same day overruled E. W. Engle's motion for a new trial and his motion in arrest. On that day also, E. W. Engle filed his application and affidavit for appeal. The terms of the application are that E. W. Engle appeals, from the order sustaining Celia Poinsett's motion for a new trial, appeals from the judgment rendered in favor of Celia Poinsett, and from the order overruling the motion of E. W. Engle for judgment on the verdict.

Authorities are cited on the question whether Engle's motion for a new trial was filed in due time, and dependent upon whether the first day of January, as well as a Sunday intervening, should be excluded in computing the time. It is not necessary to rule upon the question whether the legal holiday, the first day of January, is to be excluded in computing the time, for several reasons. The appeal was taken from the judgment during the term at which it was rendered, and the judgment is a part of the record proper. It is not necessary to file a motion for a new trial to take advantage on appeal of errors apparent upon the record proper. [Sec. 1514, R. S. 1919; Newton v. St. Louis & San Francisco Ry., 168 Mo. App. 199, and cases there cited.] The judgment shows on its face, by the preliminary recitals, that it was rendered after the court had sustained Celia Poinsett's motion for a new trial, and further shows that it was asked for and rendered, "on the pleadings and the evidence."

In Hurt v. Ford, 142 Mo. 283, a suit upon a promissory note, the answer set up certain matters as a defense. Upon the trial there was

a verdict for the defendant. The plaintiff filed a motion for a new trial and a motion in arrest. Pending disposition of those motions, plaintiff filed his motion for judgment, called a motion *non obstante veredicto*. Later, the court sustained the plaintiff's motion for a new trial, on the ground that error was committed in refusing two instructions offered by the plaintiff. Having sustained that motion, the court treated the plaintiff's motion as a motion for judgment on the pleadings, and entered judgment thereon in favor of the plaintiff. On the appeal, this court sustained the action of the trial court. This was done on the ground that a motion for a new trial having been sustained, the verdict was set aside, and the case then stood upon the pleadings, and in that situation it was allowable to move for judgment upon the pleadings, and the question raised thereby was the sufficiency of the defendant's answer, and not the question of sufficiency of the evidence. The court said, at page 298:

"The motion contained all the averments necessary in a motion for judgment on the pleadings, and treating it as a motion for that purpose, as we think it should be, the question arises as to the sufficiency of defendants' answer, and in passing upon this question we think the same rule should be applied as in the case of a motion *non obstante veredicto*. But the sufficiency of the answer must be determined by the record, and not by the evidence."

In the instant case, the court having sustained the motion for a new trial, the case between these interpleaders then stood upon the pleadings, and the court could have entertained a motion for judgment upon the pleadings, which would have raised the question of the sufficiency of the answer and claim of E. W. Engle. When the motion for a new trial had been sustained, the pleadings then defined the status of the parties, and the court could not look to the evidence which had been taken, but only to the pleadings and was without power to enter a "judgment on the pleadings and the evidence."

The effect of sustaining a motion for a new trial has been considered in a number of cases. Hurley v. Kennally, 186 Mo. 225, was a suit in equity to set aside a deed from the plaintiff to the defendant. The court found the issues for the defendant and rendered judgment in his favor. In due time the plaintiff filed his motion for a new trial mainly on the ground that the finding was against the weight of the evidence. The motion was sustained and the judgment set aside. Then the court, without notice and without a trial, proceeded immediately to render judgment for the plaintiff, and the defendant appealed. The court said, at page 228:

"The evidence on the issues of fact in the case was conflicting and it was the right and duty of the chancellor to set aside his findings and his judgment or decree based thereon, if, on a reconsidera-

tion and further reflection, he was satisfied that his first conclusions were wrong.

"The trial court has the right to grant a new trial in either a law or equity case if it is satisfied that the verdict or finding is against the weight of the evidence. The court, therefore, did not exceed its jurisdiction in sustaining the motion for a new trial.

"But when the motion for a new trial was sustained, the cause was at issue for trial again, the court had no authority to enter a judgment without another trial.

"Granting a new trial put the case in condition, so far as that court was concerned, as if there had never been a trial, and no judgment could thereafter be rendered upon the merits until a trial was had."

The ruling in that case was referred to with approval in Alt v. Dines, 227 Mo. l. c. 422. The ruling was also referred to as applicable in passing upon a like situation, in Granite Paving Co. v. Realty & Investment Co., 270 Mo. 698. That was a case certified to this court from the St. Louis Court of Appeals. Upon the hearing in the Court of Appeals, the judgments in the lower court were reversed, but motions for a rehearing were filed, and without a further resubmission the motions were sustained, the former judgment of reversal was set aside, and the judgments of the trial court, with a slight modification, were affirmed. The Court en Banc held that the judgments of affirmance, without resubmission, were void. After stating the facts constituting the question presented, the court said, l. c. 701:

"This exact point has not been ruled in this State, so far as I find, but an analogous question has been specifically ruled. Thus in Hurley v. Kennally, 186 Mo. 225, we had before us a case in equity. Upon a trial *nisi* the chancellor found for the defendant and so entered his judgment. Upon motion for a new trial being filed by plaintiff he heard the motion, and sustained the same, and immediately entered judgment for the plaintiff on the merits. The cause was appealed here as indicated above, and VALLIANT, J., said:

" 'But when the motion for a new trial was sustained, the cause was at issue for trial again, the court had no authority to enter a judgment without another trial.

" 'Granting a new trial put the case in condition, so far as that court was concerned, as if there had never been a trial, and no judgment could thereafter be rendered upon the merits until a trial was had.'

"In principle the point there decided is the point here in issue. In 3 Cyc. 219, the rule is thus stated:

" 'When a rehearing is granted, generally, the cause is before the court for examination and decision as though it had never been considered and decided.'

"It follows that the judgments of affirmance entered in these cases without re-submission and rehearing, after motions for rehearing, had been sustained, are *coram non judice*, and void, and the cases are yet before that court for final determination. The court was without jurisdiction, to enter a judgment of affirmance upon the mere hearing held upon a motion for rehearing directed to a judgment of reversal."

Along the foregoing line may also be mentioned Deiermann v. Bemis Brothers Bag Co., 144 Mo. App. 474. In that case it was said, l. c. 476:

"And on a new trial, the parties are at liberty to introduce new evidence, whether the former judgment was reversed on a question of law or fact, or both, and whether the case is a civil or criminal one. [State v. Newkirk, 49 Mo. 472.] Granting a new trial puts the case in condition, as far as the trial court is concerned, as if there had never been a trial, and no judgment could thereafter be rendered upon the merits until a trial was had. [Hurley v. Kennally, 186 Mo. l. c. 228, 85 S. W. 357.]"

To the same effect see Brayton v. Gunby, 267 S. W. (Mo. App.) 452. As we view the matter, and even though E. W. Engle's motion for a new trial was not filed in time, the judgment entered by the court is subject to reversal for error appearing on its face. That judgment must be held to be unauthorized. Beyond that, however, the court having sustained Celia Poinsett's motion for a new trial, Engle by force of the statute (Secs. 1469, 1471, R. S. 1919) had the right to appeal from that order during the term, and he did so.

Counsel for appellant in their brief discuss the question whether the issue between these interpleaders is one at law calling for a jury, or one in equity wherein the verdict of a jury could be only advisory. Authorities are cited on both theories and arguments presented in behalf of the contention that under either theory there should be a reversal of the judgment and remanding of the cause, either for entry of judgment upon the verdict, or for a new trial.

Counsel for respondent in their brief refer to these respective claims or theories, and after doing so, and referring to the manner of the trial, "concede it was tried as an action at law;" and they also say they "agree that it should be so considered on appeal." There are cases wherein there are rulings to the effect that if issues equitable in nature, without objection, are submitted to a jury on the theory that they were triable by a jury, the parties upon appeal are bound by that theory, and should be concluded by the verdict

if the cause was otherwise tried in a manner free from error. [Young v. Pennsylvania Fire Insurance Co., 269 Mo. 1; Laughlin v. Gerardi, 67 Mo. App. 372; Ellis v. Ott, 217 S. W. 588; Voss v. Smith, 84 N. Y. Supp. 471. See also, 35 C. J. 163.] In view of the action of the parties in the instant case joining without objection in submitting the issues to the jury, under instructions, and without offer of submission of the specific question of any fact involved, and in view also of the concession of counsel, we do not enter upon a discussion and determination of the question whether the cause was one in equity or at law, but act upon the assumption that the case was tried as one at law, and should be so treated upon appeal.

Counsel for respondent, following their concessions that the case was tried as one at law and should be so treated on appeal, argue that the conclusion of the trial court that the motion for a new  trial should be sustained upon the ground that error was committed in refusing to give respondent's peremptory instruction marked "B" at the close of all the evidence, was equivalent to saying that the verdict of the jury was contrary to the credible evidence in the case and that the allegations of Engle in his answers and claims were not proven. We cannot allow that contention. It is clear that the trial court, in holding he had erred in the refusal of Instruction B, did not have in mind the question of the credibility of the testimony. That he did not, conclusively appears from the language used in Instruction B. The theory of that instruction and of the trial court in sustaining the motion for a new trial, was, that the testimony for Engle, taken as true, did not constitute any evidence that Engle was in the employ of the testator at the time of the testator's death. Thereon arises the controlling question upon the appeal from the order granting a new trial.

We regard the question of the intention of Mr. Grier and of E. W. Engle as one of controlling importance, and now refer to the testimony. E. W. Engle entered the employment of Mr. Grier in 1904. In 1919 he was above the draft age, and applied to the Surgeon General for a commission in the Army. He testified that he talked to Mr. Grier about entering the army, but he was not permitted to testify to the conversation. He said that with his application he had to have certain recommendations, and that Mr. Grier gave him a letter of recommendation. He also went to see Mr. Paxton, who was vice-president and general manager of the Grier business, and says he told Mr. Paxton he was to receive a commission in the army, and "would like to have a leave of absence for the duration of the war;" that Mr. Paxton said he would be glad to give it to him, and that when he came back his position would be open for him.

Mrs. Mary Ann Grier, widow of the testator, testified to statements made by Mr. Grier, when they were starting upon a trip together in the Summer of 1919. She testified that Mr. Grier said:

" 'Well, I suppose I shouldn't go just now,' and I said, 'Why not?' He said, 'We are short of help in the office;' he said, 'I wouldn't care if Engle was home,' and I said, 'Is he coming back?' and he says, 'I hope he is.' He says, 'I am holding the place for him, but,' he says, 'I am afraid they might detain him on account of his knowledge of the commissary; but,' he says, 'I hope they won't.' "

She said Mr. Grier spoke several times of Mr. Engle and "wished he was back in the company. . . . He was mighty sorry to have Mr. Engle go; hoped he would return; that his place was always there for him."

W. J. Livingston, who was in the wholesale coffee business and had dealings with the Grier company, testified to a conversation he had with Mr. Grier while they were traveling together upon a train, some time about August, 1918. He said:

"During this conversation Mr. Grier told me that he had just loaned his best man to the army, and I said, 'Who is that?' and he said, 'Engle.' I said, 'He didn't have to go, he is a married man with children,' but he said, 'Yes, but he was bound to go and he has gone and he will be the best commissary man in the army.' I said, 'How long do you think he will be gone?' and he said, 'The war will be over in six months and Engle will be back before spring.' "

This witness was asked if Mr. Grier in this conversation said anything about his willingness or unwillingness to let Engle go. The witness answered:

"Well, in this way: I told him it was too bad for him and I couldn't go over and we would clean up those Germans in a week, and he said, 'I have done my share. They have got all my best boys.' "

Robert J. Grier, a nephew of the testator, testified that in August, 1918, at the time Engle enlisted in the army, Mr. Grier came to Chicago where the witness was; that Mr. Grier wanted the witness to come to Kansas City to work; that he (witness) asked if the position would be permanent, and asked: "What is going to become of Mr. Engle?" and Mr. Grier said: "We will take care of him when he comes back."

Shirley W. Carr, who was in the employ of Mr. Grier and in charge of the office in Chicago, testified that in August, 1918, Mr. Grier came to Chicago and told him he was going to bring Robert Grier to Kansas City; that he (witness) asked for how long that would be, and Mr. Grier said: "Until Mr. Engle came back from the army at least."

F. G. Whetham testified that prior to the war he had been in the employ of Mr. Grier for seventeen years; that he was an Englishman and entered the Canadian Army as a volunteer in July, 1916; that about March or April, 1918, while he was in a military hospital in England, he received a letter from Mr. Grier which he had destroyed. He was asked to state the substance of the letter. He said:

"Mr. Grier expressed the wish that I would soon recover and that I would come back to this country and resume my job with them, as he always expected that all his men that were in the service were just the same as in his employ, and as soon as they got through they would go back to work again. That was the substance of the letter."

Mr. Paxton, vice-president and general manager at Kansas City, was asked about the conversation with Mr. Engle concerning his going into the army. He said:

"Well, when Mr. Engle got his commission I naturally congratulated him on that fact, and when he came in the office I told him when he came back to work he would have the same job or better, or something of that nature, I can't remember the exact words, but fundamentally that is what I said."

This witness also testified that Mr. Engle, during his service in the army, was in Kansas City upon an occasion and had a conversation with Mr. Grier in the latter's office. Concerning this conversation he said:

"Mr. Engle was in, talking to Mr. Grier, before I went in; but I went in and the wind-up of the conversation was that Mr. Grier wished him all good luck and when he came back he would have a job, the best job we got, or something like that."

Mrs. H. L. Hart was called by respondent and testified to a conversation with Engle which she said occurred on the day he received his commission. She said on that occasion Mr. Engle said: "I am through with the Grier Hotel Company." The witness further testified that Engle said that he hoped he would never have anything more to do with the company; that he had finished with the company.

Mrs. Catherine McCue, a sister of the testator, was called by respondent. She testified that in August, 1918, Mr. Grier told her Mr. Engle had left the company and was going to remain permanently in the army; that "the salary and free housing had attracted him." Witness also stated that Mr. Grier said he did not expect Engle back and did not desire that he should ever work for him again. This witness testified that after Mr. Grier's death she found among Mr. Grier's effects a letter to him from Mr. Engle. This letter was dated February 22, 1919. Witness testified that this letter was retained by her until she delivered it to respondent, Celia Poinsett. The letter was introduced in evidence by respondent. So

much of it as refers to his relations with Mr. Grier, and his army service, is as follows:

"U. S. Army
"General Hospital No. 27.
"Fort Douglas, Utah, February 22nd, 1919.
"My dear Mr. Grier:

"The organization of this hospital has now reached a point where I believe my application for discharge would be approved. However it is necessary that I have some evidence to show that I have a position open in civil life and that I am losing an opportunity by being held in the army. Therefore, if agreeable to you, would like to have a letter from you to the effect that my old position is open for me, and an inquiry as to when you can expect me there to take it up. It would perhaps be better not to refer to this letter, though you can use your own judgment as regards that part of it.

"I have enjoyed my Army experience very much and I think have learned a great many things about the feeding business. There has been no danger of my getting rusty, as I am dealing in the same terms and details as are found in your business."

The letter was not answered by Mr. Grier. It is argued that the letter shows Engle did not consider himself in Grier's employment, nor that he had the promise of a place. We think the letter is to be considered with the other testimony, and with the testimony of Mrs. Grier—the statements of her husband, which she says were made in the summer of 1919, after the letter was received and evidently not long before Engle was discharged from the army.

There are not many cases presenting a question closely similar to the question here at issue. The case entitled In re Thompson's Estate, 213 N. Y. Supp. 426, was a proceeding to construe a will, and particularly the following clause:

"I give and bequeath to each of my faithful servants Lena Anderson and Weldon Kershaw, if in my employment at the time of my death, the sum of fifteen thousand dollars, and to each person not named above, who shall have been in my service ten years or more immediately preceding my decease, the sum of ten thousand dollars, and to each person who has been in my service for five years immediately preceding my decease the sum of five thousand dollars."

The testatrix had a considerable number of servants, and the court dealt with them under the classes created by the clause just quoted. One of them was a chauffeur who had entered the army service after his original employment by the testatrix. If the time he was in the army was eliminated he had not been in the service or employment of the testatrix for a period of five years immediately before her death. He had returned to the service of the testatrix on his dis-

charge from the army, and was in her service at the time of her death. The court said l. c. 431:

"The evidence shows that he was given a leave of absence by Mrs. Thompson for service in the World War with the Canadian Army. After service in France and discharge from the army, he returned to her employment under a previous arrangement made by her. The leave of absence, therefore, was with her express consent, and he must be deemed to have been five years in her service and entitled to his legacy under the terms of the will."

An English case, In re Cole, Law Reports, Chancery Division, 1919, volume I, page 218, resembles the case at bar in a number of respects. There was, however, no controversy in that case as to the facts. The will was made in 1912, and the testator died in that year. He owned a large number of shares in a certain corporation, and a provision of his will was that if the son of the testator should enter the employment of that corporation and remain in its employment until he was thirty-three years of age, he should receive a certain portion of the stock of the company. He entered the service of the company, but upon the breaking out of the World War, with the assent of the directors of the company, he entered the army, and was in the army service at the time of the proceeding in which the court was asked to make a declaration that should he obtain his discharge as soon as reasonably possible, and "then proceed to work in the service of the company and remain in that service until he was thirty-three years of age, he would then be qualified to obtain the gift of shares provided by the will." The question was answered in the affirmative. In that case the court said there was shown a clear intention of the company by its directors, and of the legatee, that the employment should continue, but, "that there should be a temporary dispensation of obligation to render service under the contract of employment." The writer of the opinion said (l. c. 223):

"Now it seems to me that the question whether he is in the employment of the company is not the same thing as the question whether he is in fact rendering actual service to the company."

It was held that whether or not he was paid a salary by the company during the time he was in the army would not be in any way conclusive, but only one of the indicia from which one might gather whether the employment was continued. It was further said, l. c. 224:

"The decision must turn on the answer to be given to the question of fact, whether the relations of employment between the employer and the employee were intended by both parties to remain as continuing conditions of employment. It seems to me that both parties intended that such relations were so to continue, although both parties

intended also that during the necessary interval Mr. Brian Cole should be at liberty to serve his King and country."

Reference was then made to the facts and the ruling made in a prior case decided by Lord ELDON. Speaking of the question at issue in the other case, the author of the opinion said, l. c. 224.:

"The question was whether what took place amounted to an intention on both sides that the service should terminate, or whether it amounted to an intention that the actual services should be temporarily dispensed with, but that the employment should continue and be resumed in its full sense at a later date."

Then followed statement of the conclusion as to the case in hand:

"In my judgment, taking that case, as I think I am entitled to take it, as an authority, the evidence here fully bears out the contention of Mr. Brian Spearing Cole that his employment by the company continued, although there was a temporary dispensation by the directors, or a leave and license granted by the directors, under which he was not to be bound to render actual service during the time that he was employed in His Majesty's Forces."

In the case at bar Engle, during the time he was in the army service performed no service for Mr. Grier or for his company, and received no salary from that source. As we view it the question is whether the relation of employer and employee, which existed between them at the time of his entry into the army service, was completely severed, and their intentions at that time constitute the important question.

In re Mitchell's Estate, 186 N. Y. Supp. 666, was a proceeding wherein the question was whether a legatee had been in the employment of the testator within the terms of the will. The testator left legacies to certain "servants who are in my employ . . . at the time of my death and have been so employed by me for not less than one year preceding my death." The servant in question was in his employment and rendered service for several months, but became ill and was obliged to go to a hospital. She was paid no salary during the four months, but was not discharged by her employer. The employer paid the hospital bills during the four months. After the four months she returned to his service, and was in the employment of the testator at the time of his death. If the four months' period was deducted she had not been in his employment the necessary length of time. It was held she was entitled to the legacy.

In People ex rel. Davie v. Lynch, 149 N. Y. Supp. 895, a civil service employee was given an indefinite leave of absence on account of illness. On recovery of her health, she decided to return to work, but was advised that, within the meaning of the city ordinance, she had been "separated from the service" for one year and could not return. It was ruled that having been granted a leave

of absence she was not separated from the service in the sense of the ordinance. It was said the expression "separation from the service" used in the rules had the same meaning under the rules that it had in the law. A question considered was that of good faith of the employee in offering to return after her health was recovered.

Both parties call attention to the definition given by the Supreme Court of the United States in United States v. Morris, 14 Peters, 464, 475:

"To be 'employed' in anything means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it."

This definition was applied in the prosecution of Morris, as a citizen of the United States, and commander of a vessel employed and used in the transportation of slaves, and at the time, outward bound for the coast of Africa for a cargo of slaves, but not at that time actually carrying any slaves. It was held that he was within the provision and inhibition of the statute, against serving upon a vessel employed and used in the transportation of slaves.

Counsel for respondent have called attention to Section 495, United States Code, Annotated, Title X, Army, as prohibitive of the agreement or relation here in question. The section is as follows:

"No officer of the Army shall be employed on civil works or internal improvements, or be allowed to engage in the service of any incorporated company . . . if such extra employment requires that he be separated from his company, regiment or corps, or if it shall otherwise interfere with the performance of the military duties proper."

We are unable to see the application of that section under the circumstances shown in this case.

It is suggested that the declarations of the testator were not admissible to impeach the will. The declarations went in evidence without objection. However, they were not in impeachment of the will, but referred to the intention of the testator, who was also the employer, at the time Engle entered the army. As heretofore indicated, we conclude that the action of the court is grounded upon what the court conceived to be the legal effect of the evidence, but not upon its credibility. It seems clear that the court proceeded upon the theory that no leave of absence could be granted the employee which would retain him in the relation or status mentioned in the will, or, on the theory that taking all of the testimony for appellant as true, it did not show the granting of a leave of absence. The pleadings were sufficient to present the issues and in our view the evidence warranted the verdict. It is therefore concluded that the action of the court in entering judgment for respondent should be reversed, and the order granting a new trial be set aside, and the

cause remanded to the end that judgment be entered in accordance with the verdict. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.