[Civ. No. 2374.  Fourth Appellate District.—January 12, 1940.]

In the Matter of the Estate of HATTIE A. FLETCHER, Deceased.  GILBERT JENSEN, Respondent, v. MARIE MARTIN et al., Appellants.

Stanford & Yale, Don L. Yale and Lindley & Higgins for Appellants.

Thomas Whelan and Vincent Whelan for Respondent.

GRIFFIN, J.—Hattie A. Fletcher died testate on the 17th day of November, 1937. Thereafter her will was admitted to probate and Sumter B. Smith and Marie Martin were appointed executors thereof. Her will provided in part as follows:

"SECOND: I hereby declare that I have a dog named 'TEDDY'. If my dog TEDDY survives me . . .

"I give, devise and bequeath to my executor, SUMTER B. SMITH, . . . the sum of Ten Thousand Dollars ($10,000.00) . . . as trustee . . . for the best care and comfort of my dog TEDDY during the life of my said dog. . . .

"Upon the termination of this trust by the death of my dog, I then provide that the corpus of the trust shall go to MARIE MARTIN, my residuary legatee.

"THIRD: I hereby give, devise and bequeath to my chauffeur, GILBERT JENSEN, the sum of Ten Thousand Dollars ($10,000.00) provided that he is at the time of my decease in my employ. Should, however, the said GILBERT JENSEN not be in my employ at the time of my death, I then provide that this bequest shall go to my residuary legatee. . . .

"FOURTEENTH: All the rest, residue and remainder of my property, of whatsoever nature, and wheresoever situated, I give, devise and bequeath to MARIE MARTIN, of 4441 Forty-seventh Street, San Diego, California."

On September 10, 1938, Gilbert Jensen filed a petition for partial distribution of the legacy to him, alleging that he was in the employ of Hattie A. Fletcher at the time of

her decease. Sumter B. Smith, as one of the executors, filed what was denominated "Answer to Petition for Partial Distribution" and Marie Martin, as one of the executors and as residuary legatee, filed her "Resistance to Petition for Partial Distribution". Both the answer of Smith and the resistance of Marie Martin denied that Jensen was in the employ of Hattie A. Fletcher at the time of her decease. The trial was had before a jury, to whom the interrogatory "Was Gilbert Jensen in the employ of Hattie A. Fletcher on November 17, 1937" was submitted. The jury replied "Yes". A judgment on the verdict in open court was thereupon entered and thereafter the court made an "order and decree of distribution prior to final settlement", which ordered that the executors "pay and deliver to the said Gilbert Jensen the whole portion of said estate to which he is entitled, to-wit, the sum of Ten Thousand Dollars ($10,000.00), together with interest thereon at the rate of 7% per annum from November 17, 1938, upon the condition that there be first paid all inheritance taxes upon said legacy or that there be filed the written consent of the State Controller to said distribution; otherwise that said executors deduct and pay out of said legacy of $10,000.00, any inheritance taxes due the State of California, thereon or to collect from said devisee the amount of the said tax".

The objectors made a motion to dismiss the petition for partial distribution which was in the nature of a motion for a nonsuit at the close of petitioner's case, a motion for a directed verdict, a motion for a judgment notwithstanding the verdict, and a motion for a new trial. All these motions were denied by the court.

Respondent entered the employ of the deceased, Hattie A. Fletcher, and of her sister Alice Amidon, in August of 1934. Alice Amidon died in September of 1936. Thereafter, respondent Jensen continued to work for the decedent Hattie A. Fletcher. Mrs. Fletcher made a will on November 23, 1936, appointing Marie Martin as executrix, a stranger in blood, and made her residuary legatee thereunder. The executrix was a nurse who had cared for Mrs. Amidon during her last illness and had also cared for Mrs. Fletcher during an illness in 1935. After the death of Mrs. Amidon, Marie Martin continued on friendly terms with Mrs. Fletcher, visiting her frequently. For two or three years prior to the

death of Hattie A. Fletcher, she attended a course in business law conducted by an attorney; Miss Martin recommended this attorney to Mrs. Fletcher to prepare a new will for Mrs. Fletcher. On May 4, 1937, Miss Martin accompanied Mrs. Fletcher to the attorney's office and introduced Mrs. Fletcher to him. He then prepared the will executed by Mrs. Fletcher which was admitted to probate.

Relations between respondent Jensen and decedent, his employer, were most friendly. She gave him a yearly birthday party, sometimes referred to him as her son, interested herself in his personal affairs by expressing a wish that he should marry the girl whom he later married. About September 29, 1937, Mrs. Fletcher became ill and on that date, at her instance, Gilbert Jensen called Marie Martin to come to the home of Mrs. Fletcher to take care of her. Jensen came daily to the home of Mrs. Fletcher and performed his usual duties until November 1, 1937. During this period of her illness, Mrs. Fletcher was alone in the house with Marie Martin, except for the visit of two or three friends. Mrs. Fletcher's treatment of Jensen up to November 1, 1937, had not differed from her earlier treatment of him. It is claimed by Marie Martin, the residuary legatee, that on November 1, 1937, she was called by Mrs. Fletcher to her room and there told: "Go down to the bank to Mr. Smith and ask him if he will take and do me a favor of discharging Jensen. He is becoming too presuming, he is entering into all of my private affairs. He is asking me personal questions and if I try to do it, he is going to argue with me." The Mr. Smith referred to was Sumter B. Smith, manager of one of the branches of the Security Trust & Savings Bank of San Diego, with which bank Mrs. Fletcher had an account. Shortly before the time of this claimed conversation, Gilbert Jensen was at this bank where he had gone to make a deposit at the request of Mrs. Fletcher. Upon Jensen's return from the bank Marie Martin went to the bank and told Mr. Smith she had been asked by Mrs. Fletcher to have Mr. Smith inform Mr. Jensen that his services were no longer required *at that time*. She requested Mr. Smith to phone for Jensen to come to the bank but to wait until she had time to return to the Fletcher home before phoning. Smith then asked the privilege of phoning Mrs. Fletcher to find out if the communicated order was authentic and he was told by Miss Mar-

tin that Mrs. Fletcher "was not able to come to the phone". The evidence indicates that she could have gone to the phone but with some difficulty. Mr. Smith, later that day, requested Jensen, by phone, to come to the bank where Smith told him that his "services were not any longer required *at this time*". There is confusion in the record as to whether or not these conversations contained the words above italicized. Smith's thought was that the cessation of services was for the time being. However, he also testified that he didn't have a right to say that it was for the time being only, as he did not know.

Jensen returned to the Fletcher home where he was with Mrs. Fletcher for about a half hour and told her that Mr. Smith had said that Jensen was temporarily released "on account of the estate could not afford expenses at this time", and Mrs. Fletcher told Jensen: "Well, they can't do that to me." "There is one thing they can't do, Jensen, they can't take you out of my will." He left the house at 5 o'clock that evening when Mrs. Fletcher said to him to be sure and come back every day.

On the 2d day of November, Sumter Smith again called Jensen to the bank, where Smith made some inquiries concerning Mrs. Fletcher's condition. Because of a request made by Marie Martin, Jensen did not return to the Fletcher home on November 2d, but on that date, Arthur Dorval, Mrs. Fletcher's friend of five and a half years' standing, called on her, and she told him that she didn't know why they took Jensen from her, and that she needed him more than ever right now; and asked Dorval to tell Jensen to come and see her. The next day Jensen called on Mrs. Fletcher, when she stated that she hoped that she would soon be up so that conditions would be back to normal. Neither then nor ever did she say anything to him about terminating his employment. Thereafter Jensen paid several visits to the home, but was refused admittance by Marie Martin. After November 1st, he did not seek work, but thought that after a temporary layoff he would be recalled. Mrs. Fletcher died about 2 A. M. on November 17, 1937, leaving an estate of about $40,000.

The evidence is conflicting, and from the testimony produced by appellants, it indicates that Jensen made a statement to one witness repeatedly that "he had been discharged

a few weeks before she died and that she had called him in and told him she was sorry to let him go''. The evidence further discloses that on November 1, 1937, Jensen accepted a check for his last two weeks' services which was paid in advance, and that he then removed his belongings from the Fletcher home. However, from the record of the evidence we are convinced that the jury could (1) have disbelieved, in its entirety, the evidence of Marie Martin, and considered that the purported discharge of Gilbert Jensen, so far as it was claimed that Mrs. Fletcher authorized it, was a fraudulent device upon the part of the residuary legatee, or (2) the jury must have found from the evidence that the oral directions communicated to Smith and to Jensen, even though they originated from Mrs. Fletcher, were the basis of merely a temporary cessation of services and not a permanent and complete discharge.

In *Estate of Cowell,* 170 Cal. 364 [149 Pac. 809], in construing a similar bequest made to certain employees ''now working for said firm'', the court held, in reference to certain employees who had been temporarily suspended from a particular work of the company in which they had been engaged, that they were within the employ of the company during such temporary suspension for the purpose of receiving the devise. (See, also, *Hovey* v. *Grier et al.,* 324 Mo. 634 [23 S. W. (2d) 1058]; *Cole* v. *Cole,* 1 Chancery (1919), 218, 223; *Herbert* v. *Reid,* 16 Vesey Junior, 481 (33 Eng. Reprint, 1067); cited with approval in *Cole* v. *Cole, supra; Abbott* v. *Lewis,* 77 N. H. 94 [88 Atl. 98]; *In re Mitchell's Estate,* 114 Misc. 370 [186 N. Y. Supp. 666, at p. 668]; *Anderson* v. *Stone,* 281 Mass. 458 [183 N. E. 841, 843]; *Boyle* v. *Howe,* 126 Fla. 662 [171 So. 667].)

The uniform attitude of the courts of various jurisdictions displayed in the foregoing decisions, are all favorable to the employee, and if applied to the evidence which the jury must have believed in the present case, disposes of the first contention of the appellants.

The following instruction was requested by appellants and was by the court refused:

''You are further instructed that even though you find from the evidence that Sumter Smith did not have proper authorization to discharge Gilbert Jensen, still if you find that he actually did discharge Gilbert Jensen on November 1,

1937, and if you find that the acts and conduct of Hattie A. Fletcher thereafter, with knowledge of the discharge, reasonably tended to show an intention to ratify the discharge and were inconsistent with any supposition other than that of a previous authorization or an intention to abide by the fact, though unauthorized, you must find that the discharge of Gilbert Jensen by Sumter Smith was effective for all purposes.''

''You are instructed that ratification of the acts of an agent is implied whenever the acts and conduct of the principal having full knowledge of the facts, are inconsistent with any other supposition than that of previous authority, or an intention to abide by the act, though it was unauthorized. It is not essential that it be shown that there was assent to and confirmation of the transaction expressed in words. (*Ralphs* v. *Hensler,* 97 Cal. 296 [32 Pac. 243].) A ratification of the acts of one assuming to be an agent may be implied from conduct on the part of the principal reasonably tending to show an intention to ratify the acts. (*Union Trust & Realty Co.* v. *Best,* 160 Cal. 263 [116 Pac. 737].)''

No other instruction on ratification was given.

Appellants contend that the failure and refusal to give this instruction was prejudicially erroneous. █ Ratification of the previously unauthorized acts of an agent requires that the principal have full knowledge of all of the facts, particularly of the acts of the person claiming to act as agent. The principal must also have full knowledge of his rights in the matter, which implies a knowledge of the legal effect of the acts, and to constitute a ratification the principal must be acquainted with what has actually been done, and he is not bound by an approval made under a misapprehension of the real nature of the facts. Unless all the circumstances are made known to him, the ratification is void. (*Ballard* v. *Nye,* 138 Cal. 588 [72 Pac. 156]; *Dean* v. *Bassett,* 57 Cal. 640; *Golinsky* v. *Allison,* 114 Cal. 458 [46 Pac. 295]; *Munroe* v. *Fette,* 1 Cal. App. 333 [82 Pac. 206]; *Brown* v. *Rouse,* 104 Cal. 672 [38 Pac. 507]; *King* v. *Lagrange,* 50 Cal. 328, 332; 1 Cal. Jur., p. 777, sec. 69.)

From the evidence and authorities cited we are convinced that the refusal to give the proffered instruction was not prejudicial error.

■ The remaining point involved pertains to the order of partial distribution. It is claimed that the court erred in making the order for partial distribution when there had been no payment of inheritance tax and no consent to the distribution by the State Controller, and that the order made is erroneous in that it is in the alternative with regard to the manner in which payment of the inheritance tax should be secured. Appellants contend that the amendment to section 1001 of the Probate Code in 1937 changed the procedure that theretofore obtained so as to make the cases of *Estate of Ross,* 187 Cal. 454 [202 Pac. 641], *Estate of Hill,* 94 Cal. App. 113 [270 Pac. 708], and *Estate of Johnson,* 218 Cal. 501 [23 Pac. (2d) 1012], inapplicable. There is no more force in the provisions of section 1001, as amended, than in section 1024 of the Probate Code, which was in effect at the time the order appealed from in the *Estate of Johnson, supra,* was made. Such provision was also in the statutes as section 1669 of the Code of Civil Procedure at the time the order was made which was appealed from in *Estate of Hill, supra.* The cases cited, together with the case of *Estate of Cohn,* 20 Cal. App. (2d) 550 [67 Pac. (2d) 362], adopting the rule therein stated, sufficiently determine the sole point as to which the appellants have any interest on this appeal, that is, whether they are, as executors of the last will and testament of Hattie A. Fletcher, deceased, protected by the order. Obviously, they are justified in making the distribution to petitioner by deducting from the sum to be distributed, an amount sufficient to satisfy the inheritance taxes against his share.

The judgment and orders from which this appeal has been perfected are affirmed.

Barnard, P. J., and Marks, J., concurred.