[Civ. No. 15977. Second Dist., Div. One. Jan. 26, 1948.]

FIRST TRUST AND SAVINGS BANK OF PASADENA (a Corporation), as Trustee, etc., Plaintiff and Respondent, v. FRANK B. COSTA, Appellant; PASADENA HISTORICAL SOCIETY (a Corporation), Defendant and Respondent.

J. E. Simpson and Harry A. Wishard for Appellant.

Newell, Brown, Hamill & Hunt and Harry M. Hunt for Defendant and Respondent.

WHITE, J.—This is an appeal from a judgment entered in a declaratory relief action brought by the respondent First Trust and Savings Bank of Pasadena, as trustee, to secure an adjudication as to whether the appellant, Frank B. Costa, or the respondent Pasadena Historical Society was entitled to conveyance of certain real property held by it as trustee under a trust indenture executed by Elma B. Stuart. From a judgment determining that the respondent Pasadena Historical Society was entitled to the property, appellant Costa has appealed.

In 1937, the property of Mrs. Stuart was conveyed in trust and later the trust indenture was modified to provide for the disposition of the property occupied by Costa as follows:

"Upon the death of the Trustor, in the event FRANK B. COSTA is in the employ of the Trustor at the date of her death, the Trustee shall transfer and convey to him the real property known as 120 North Delacy Street, Pasadena, California, being Item No. 43 in Schedule 'A' attached to said trust indenture, together with the improvements thereon, being the first brick house in Pasadena built in 1879 by Trustor's father, Benjamin F. Ball. In the event that the said FRANK B. COSTA is not in the employ of the Trustor at the date of her death, the Trustee shall transfer and convey said real property,

together with the improvements thereon to the PASADENA HISTORICAL SOCIETY, with the request that it be used jointly with the PASADENA PIONEER SOCIETY.''

Both appellant and respondent concede that the question presented on this appeal is whether appellant Costa was in the employ of Elma B. Stuart, trustor, at the date of her death within the meaning of the trust agreement executed by her.

It is conceded by all parties that defendant Costa was employed by the Stuarts as family chauffeur from November, 1929, to October 31, 1942; that he was considered in the employ of Mrs. Stuart even though his dealings were largely with Mr. Stuart, who handled his wife's business affairs. In 1931, the Stuarts requested that Costa move into the property here involved. Although the property had previously rented for $50 per month, defendant Costa has paid but $25 per month down to the present time.

The relations between the Stuarts and defendant Costa at all times down to and including the date of the death of Mrs. Stuart were very friendly and cordial. They had no disputes or disagreements of any kind. At the trial Mr. Stuart, a witness for plaintiff bank, testified that the relations between himself, Mrs. Stuart and defendant Costa were ''friendly and cordial. He was a good driver and attentive to her'' and ''was a faithful and loyal employee.''

In the summer of 1942, defendant Costa, who was a veteran of World War I, aged 53 years, expressed to Mr. Stuart his desire about going into war work. To this Mr. Stuart said, ''Yes, that would be all right.'' In October of 1942, defendant Costa again discussed this matter with Mr. Stuart, stating that he thought that Mrs. Brace, who was Mrs. Stuart's companion, could take his place as chauffeur, in view of the fact that the Stuarts were not doing much driving; that he, Costa, felt that Mrs. Brace could take his place while he went into a defense plant; that he would try to get work on the ''graveyard shift'' so that he would be available during the daytime for service to the Stuarts. Mr. Stuart agreed to this plan and gave defendant Costa the day off to secure employment in war work. Costa went to the Lockheed plant, applied for a position, was accepted, and advised Mr. Stuart of that fact, the latter of whom said, ''It was all right, that they could get along with Mrs. Brace.'' Defendant Costa taught Mrs. Brace how to operate the car. Mr. Stuart corroborated defendant Costa's testimony in this regard, stating

that when the latter mentioned his desire to aid in war work it was "quite agreeable to me." When defendant Costa asked Mr. Stuart about going back to work for the Stuarts, he was told that Mrs. Stuart was critically ill; that her husband did not know what their circumstances would be when the war was over, but that if his wife wanted defendant Costa he would be glad to have him back again.

It was undisputed that after Costa went to work for Lockheed, the Stuarts requested, and he did perform for them, any and all services requested, including the following: When the Stuarts were evicted from the Vista del Arroyo Hotel in the spring of 1943, he helped to pack and move their personal belongings to their new location, and thereafter performed the same services in moving to other locations. He drove for the Stuarts on Mrs. Brace's day off and for a full week while she was on vacation in 1943. He drove for them on other occasions. He hoed weeds for them for several days. On the very day of Mrs. Stuart's death, Costa was actually driving her husband in picking up and delivering Christmas packages to friends of the Stuarts.

It is also uncontradicted that no full-time chauffeur was employed to replace defendant Costa, but Mrs. Brace and Miss Morrison, a niece of Mrs. Stuart, did such driving as could be done under gasoline rationing. There is evidence that on different occasions when defendant Costa was driving the Stuarts, Mr. Stuart said that he was glad that Costa was driving for him and that "it was like old times. I am glad to have you drive." On another occasion, when he was driving both Mr. and Mrs. Stuart, the former said, "It seems like old times. I will be glad when this mess is over, so that you can be back with us."

Respondent takes no issue with the foregoing statement of the evidence, other than to assert that defendant Costa was not performing services for Mrs. Stuart, the trustor, on December 22, 1945, the date of her death; that Mr. Stuart testified his wife was in a coma on that day and did not know anything about Costa driving Mr. Stuart.

From the foregoing it is evident that there was no substantial conflict in the evidence, all of which was directed toward establishing whether or not appellant was in the employ of the trustor, Elma B. Stuart, at the date of her death. The trial court held that he was not. Since the evidence was without conflict, it follows that the conclusion

arrived at by the trial court was based upon the construction of the terms of the written instrument. In the instant case there was no issue of fact, and it therefore becomes our duty to make the final determination in accordance with principles of law applicable to the uncontroverted facts. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)

The evidence was undisputed that after appellant went to work for Lockheed Aircraft Corporation in 1942, the Stuarts requested him to, and he did, perform for them any and all services requested during the period that he was so employed on the "graveyard shift" by the Lockheed Aircraft Corporation. He was always available during the hours he was not actually working for the aforesaid corporation; and that he did during those hours perform services for the Stuarts, is evidenced by testimony hereinbefore narrated. It is also conceded and noteworthy that during the interim when appellant was working nights at the Lockheed plant, the Stuarts permitted him to occupy the house here in question under the same terms and reduced rental that had applied to his tenancy prior to his employment at Lockheed. We are persuaded that appellant was in the employ, though possibly not in the exclusive employ, of the trustor at the time of her death.

The guiding principle in a case such as the one now engaging our attention is, what was the intention of the trustor as expressed in the trust instrument? It is not a question of what the trustor intended to say, but what she intended by what she did say. In the trust instrument now before us the trustor did not specify that on the date of her death appellant should be in her "exclusive" employ, but simply stated "in the employ" of the trustor at the date of her death.

No citation of authority is required for the statement that unless one performing services for another is an independent contractor, he is a servant or employee. The courts have uniformly held that where there is a temporary suspension from a particular work in which the employee has been engaged, he is, nevertheless, within the "employment" of the person or company for whom he works during such temporary suspension, for the purpose of receiving a devise, the reception of which is dependent upon whether he is in the employ of the testator (*Estate of Fletcher,* 36 Cal.App.2d 567, 572 [97 P.2d 1039]). As was said by the court in the case just cited (p.

572), with reference to cases therein referred to, ''The uniform attitude of the courts of various jurisdictions in the foregoing decisions are all favorable to the employee. . . .''

The findings of the court herein would indicate that it was under the belief that *continuous and exclusive* employment was required before appellant could take under the trust. As we read the provisions of the trust agreement before us, the apparent desire of the trustor was that appellant should receive the property in question in the event he was in her employ at the date of her death, regardless of whether or not the employment had been continuous or exclusive. We find no language in the trust agreement which indicates any idea on the part of the trustor of exclusive and continuous full-time employment. And as heretofore pointed out, appellant was actually rendering services for the trustor in delivering Christmas packages on the very date of her death. Under the undisputed evidence in the instant case, we do not think it can be said that appellant was fully discharged as an employee or that his employment by the Stuarts was severed or terminated; in fact all the evidence showed that he was at least a part-time employee at all times. That it was not the intention of the Stuarts to terminate appellant's employment, nor the intention of the latter to abandon his employment with them, is evidenced by remarks made by Mr. Stuart on different occasions while appellant was working nights at Lockheed, such as, ''It is like old times. I am glad to have you drive me,'' and ''It seems like old times. I will be glad when this mess is over, so you can come back with us.''

We are persuaded that in the case at bar there was simply a temporary suspension of the *full-time* work in which appellant had been engaged, due to existing war conditions, when he could work at night in war activities, and be free to work for the Stuarts in the daytime, as he actually did. In other words, the arrangement amounted to an intention between both parties, not that the employment should be terminated, but that the actual full-time services should be temporarily dispensed with, and that the employment should continue as a part-time employment during the time appellant was engaged in war work, to be later resumed as a full-time employment at a later date, should the trustor so desire. To state it in another way, appellant was given a conditional leave of absence to render services in a war plant, and that arrangement was with the trustor's express consent. Authority for

the foregoing reasoning is found in *Estate of Cowell,* 170 Cal. 364 [149 P. 809] ; *Estate of Fletcher, supra;* and *Hovey v. Grier,* 324 Mo. 634 [23 S.W.2d 1058].

In view of the foregoing conclusion at which we have arrived, we do not deem it necessary to discuss appellant's contention that by reason of his membership in the civilian auxiliary to the military police during the time he was employed by Lockheed Aircraft Corporation, he was inducted into the "land or naval forces" under section 8 of the Selective Service and Training Act of September 16, 1940 (50 U.S.C.A. App., § 308), and was considered as being merely on leave of absence from his civilian employment by the Stuarts.

For the reasons herein stated, the judgment is reversed and the cause remanded, with directions to the court below to enter judgment for the defendant, Frank B. Costa.

York, P. J., concurred.

DORAN, J.—I dissent. Appellant contends that, "The question presented on this appeal is whether appellant Costa was in the employ of Elma B. Stuart, trustor, at the date of her death within the meaning of the trust amendment executed by her."

From a review of the record, it appears to me that the only question presented by the appeal is whether the evidence supports the judgment. Whether appellant was "in the employ of the trustor at the date of her death," within the meaning of the trust indenture, obviously was a question addressed to the judgment of the trial court, and its determination of that question necessarily included a consideration of other evidence, not only as an aid to the interpretation of the trust indenture, but as to the application thereof as well. The judgment of the trial court represents the effect of the evidence and it is well settled that an appellate court is without power to substitute its judgment for the judgment of the trial court in such circumstances. In my opinion, the evidence supports the findings and judgment.

A petition for a rehearing was denied February 17, 1948, and defendant and respondent's petition for a hearing by the Supreme Court was denied March 25, 1948.